### MEARS v KELLEY

Ohio Appeals, 7th Dist, Mahoning Co

No 2402. Decided April 8, 1938

K. H. Powell, Youngstown, and Clyde W. Osborne, Youngstown, for Plaintiff-Appellee.

Manchester, Ford, Bennett & Powers, Youngstown, Defendant-Appellant.

MONTGOMERY, SHERICK and LEMERT, JJ, of the Fifth District, Sitting by Designation.

### OPINION

By LEMERT, J.

This is an action brought by the Appellee, hereinafter referred to as plaintiff, against the Amus-U-Theatre, appellant, an operative name for a partnership, hereinafter referred to as defendant. The case came on for trial and resulted in a verdict in favor of the plaintiff in the sum of $1250.00. Motion for directed verdict was made at the close of plaintiff's evidence, and again at the close of all of the evidence. Motion for new trial was duly filed and overruled. This appeal is on questions of law only.

Plaintiff, on the 14th day of October, 1934, in company with some other friends, went to the Amus-U-Theatre, situated in Struthers, Mahoning County, Ohio, for the purpose of witnessing a picture show. She purchased a ticket and entered the lobby or foyer of the theater, where she and her friends, as well as other patrons, were detained until the crowd then in the theatre had left. The foyer of this theatre was approximately ten or twelve feet, and at the northerly edge of it were two posts, about four feet apart, across which was connected a rope with hooks on the ends, so they could be disconnected for the purpose of letting people pass through the gate. The theatre was a small structure and had one center aisle. When a performance is finished the patrons of the theater pass up the center aisle, pass through the gate hereinbefore mentioned, and out the northerly door. The patrons enter a southerly door and walk into this foyer, where they are detained until seats are available.

It is the claim of the plaintiff that after she had entered the foyer, she was detained by reason of this rope across the gate. While she waited there the foyer in back

of her was filled up with a crowd of people; that when the patrons of the theatre would pass out, an usher would remove the rope to permit those waiting in the foyer to pass down into the seats, and that in so doing the crowd back of her gave her a shove, causing her to fall down against the seats and receive the injury complained of. She went to her seat and remained in the theatre for a short time, after which she left and was taken to her home in Niles, Ohio, by one of her friends.

Plaintiff alleged in her petition that the defendant was negligent in permitting a crowd of people to enter the foyer, and negligently failed to protect the plaintiff when the rope was moved to permit the patrons to pass into the theater, and that defendant failed to keep proper supervision over her patrons to prevent them from crowding- and shoving and injuring plaintiff; that she failed to keep her premises in a reasonably safe condition for this plaintiff, in accordance with her invitation; that she failed to use the proper degree of care in handling her patrons, having in mind said patrons' customary conduct, and that defendant knew, or in the exercise of ordinary care, could or should have known of the number of people who were standing in back of this plaintiff and the probabilities of their actions in the event that they were permitted to enter the aisle in a group.

A general diagram of the lobby or foyer is before us as an exhibit. However, the issues and facts presented in this case do not require us to be particularly interested in that part of the theater where the seats are located, but we are interested in the plan and dimensions of the front of the theatre, such as the entrance, the vestibule and the lobby, as it is divided for the receiving and discharging of patrons.

On the day in question a picture was shown known as "Dimples", sometimes known as "Baby Take a Bow", with the juvenile artist, Shirley Temple, as the attraction. This program was an unusually attractive program and brought to the theatre an unusual number of people, with the result that five shows were put on during the afternoon of this day.

The record discloses that the ordinary and customary personnel in conducting this show and handling the crowds, consisted of Mrs. Pat Kelley, the defendant, the cashier and two boys of the age of nineteen and thirteen years, respectively; that these boys were permitted to perform some duties within the theatre as compensation

for them being permitted to see the show without charge. The record is clear that on the afternoon in question Mrs. Pat Kelley could not give attention to the patrons, since the cashier was absent. She was continuously in the booth, selling tickets from 1:30 P. M. until 9:30 P. M. So that the only persons who seemed to be there to handle the crowd was an employe by the name of George Adams and the volunteer boys, as aforesaid.

The record is clear that the management permitted a vast throng of people to crowd into this receiving lobby, with the result that when the chain was let down the people in the lobby surged through the opening, and everybody seemed to push and shove their way in. When said chain was lowered, the plaintiff, having retained her position near the chain at the opening and thereby being in front of the mob, started through between the posts, with the result that the rushing crowd from behind threw her with great force to the floor of the aisle, near the seats on the left hand side of the aisle. After being hurled to the floor she seized the arm of the nearest seat and endeavored to, and did, raise herself from the floor, when she was again hurled by the shoving mob across the arm of the seat by the aisle and again to the floor between one row of seats and the back of the seats ahead.

The record before us, without controversy, presents a situation in conformity with what has hereinbefore been stated, and there is but one contention really advanced here upon the part of the appellants, the defendants below, and that is that conceding the injuries to plaintiff, and the manner in which they were caused, the question of actionable negligence on the part of the defendant below they claim was not a jury question, and they contend that as a matter of law, no duty owed by the defendants to this plaintiff was violated by the defendants.

The question of proximate cause is not before this court. The plaintiff was injured. She was injured by being knocked down by the crowd that came surging thru the opening when the chains were lowered, so that the main contention of the defendants, when it is all summed up, is that the management of a place of amusement owes no duty to protect its patrons from injury by the proper handling of crowds. We can not agree with this contention and we believe the law to be that those who operate amusement places must exercise reason-

able care to meet hazards and dangers which may reasonably be anticipated. That there was a hazard and danger in this situation, is beyond dispute. The very thing that transpired proves the hazard and danger, and for one to urge that proprietors of amusement places do not and should not recognize the disposition of crowds to stampede for seats, or otherwise, in amusement places, unless controlled, is to confess a complete lack of understanding of the "crowd spirit."

The question before us clearly presents a jury issue, to-wit, should the management or proprietor have anticipated the danger? Did she meet the measure of care required? If she did not meet the measure of care required, was plaintiff injured, and, if so, were her injuries the direct and proximate result of such want of care on the part of the proprietor or manager? But, Counsel for appellants urge that there is nothing to be weighed by a jury in this case; that as a matter of law it should be declared by this reviewing court that there was no duty violated to this plaintiff patron by the defendant.

An intelligent inquiry to the question at issue in this case is to determine the law or rule in Ohio in regard to the duty of those who invite patrons upon their premises. This is not a new question in our state but was touched upon in the case of DUNN v AGRICULTURAL SOCIETY, 46 Oh St 93. We find that the Supreme Court of our state, defining the duty of proprietors of amusement places in the case of BASEBALL COMPANY v ENO, reported in 112 Oh St 175, wherein the court say:

"One who expressly or by implication invites others to come upon his premises must exercise ordinary care to guard them against danger, and to that end he must exercise ordinary care to render the premises reasonably safe for the invitees."

The court, in the same case, at page 182, says:

"Under such circumstances since the management had expressly invited the plaintiff to come upon its premises, it was its duty to exercise ordinary care not to invite her into danger, and to that end it was its duty to exercise ordinary care to render the premises reasonably safe during the period of plaintiff's sojourn there as an invitee. Being in the business of providing public entertainment for profit, it was bound to exercise care commensurate with the circumstances of the situation to protect patrons against injury."

The law on this point is well settled in 45 Corpus Juris, page 858, Section 281. The great weight of authority in Ohio and elsewhere holds that the duty of the proprietor of a place of amusement to exercise reasonable care for the protection and safety of its patrons, goes further than the mere provision of suitable premises. One who invites persons upon his premises must properly protect persons accepting the invitation. In this day and age when managers and proprietors of places of amusement, and other places, invite the public and thereby cause great crowds of people to be amassed together, it would be violative of the common rules of humanity to say that no duty was imposed upon those proprietors and managers who bring these crowds together for their profit, to exercise ordinary care to protect and guard these people from the "crowd spirit" which always prevails, and since they owe such duty, it clearly becomes a jury question under a proper charge of the court, as to whether the proximate cause of an injury to a person did or did not arise through a breach of duty.

We find no error in the record in the instant case, and it follows that the judgment of the court below will be, and the same is hereby, affirmed. Exceptions may be noted.

MONTGOMERY and SHERICK, JJ, concur.