Jacqueline Marie **PALMER**, etc., Appellant,

v.

**F. W. WOOLWORTH COMPANY, Inc.**
t/d/b Woolco, Appellee.

Court of Appeals of Kentucky.

March 20, 1970.

Gilbert Hale Nutt, Segal, Isenberg, Sales & Stewart, Louisville, for appellant.

Lively M. Wilson, David C. Brown, Louisville, for appellee.

PALMORE, Judge.

Jacqueline Marie Palmer, an infant suing by next friend, appeals from a judgment entered on a directed verdict for the defendant at the close of plaintiff's evidence in her action against F. W. Woolworth Company for personal injuries resulting from an accident in one of Woolworth's stores. We concur in the judgment of the trial court that the evidence did not present a submissible issue of negligence.

The accident happened between the hours of 10:30 and 11:30 on a Saturday morning in June of 1967. Jackie, the plaintiff, was then 2½ years old and was with her mother, Georgia Ann Palmer, in the Woolco Department Store located at Indian Trail Shopping Center in Louisville. Mrs. Palmer had made a purchase and was waiting in one of the check-out lines to pay for it. Jackie was sitting in a seat equipped for that purpose in the upper portion of a 4-wheeled pushcart or "bascart" of the type commonly furnished by stores for customers' use in transporting their purchases to and through the check-out lanes. There were "eight or ten" check-out lanes in this particular store, and all of them were crowded. At the time of the incident in question Mrs. Palmer was the second in line from the cashier and there were 10 or 12 people in line behind her, all with carts similar to the one containing her merchandise and child. She had been in the line only "four or five" minutes, there having been just three customers ahead of her when she queued up. The store manager was standing nearby.

According to Mrs. Palmer's testimony, the people waiting in these several checkout lines "were all pushing and shoving against each other. They were impatient * * *. I was standing in the check-out line, and I was pregnant at the time; and the people behind me kept pushing me up against the cart, and it was getting uncomfortable, and I turned sideways to avoid that; and just as I turned sort of sideways, the whole crowd came forward and pushed the cart, and when it did, it tilted up, and Jackie fell forward * * * and she hit this masonite display, and it split her head open." The wound required several stitches but did not result in permanent injury.

On cross-examination Mrs. Palmer further explained that just as she turned sidewise "the crowd pushed all forward" and the cart of the lady waiting next in line struck Mrs. Palmer's cart "sideways and caused it to lift up. I guess because Jackie was in the back was making it heavier than in the front."

There is no disagreement with respect to the general legal principle applicable to a situation of this kind, which has been nicely stated by one of the intermediate courts of our sister state Florida as follows: "A proprietor is not an insurer of the safety of his customers but is charged with the duty of maintaining his premises in a reasonably safe condition and guarding against subjecting a customer to dangers of which the proprietor is cognizant or might reasonably foresee." Walker v. Feltman, Fla., 111 So.2d 76, 78 (Dist.Ct. App.1959).

The question in the case is whether, from the evidence above summarized, it would have been reasonable for a jury to find that the proprietor, in the exercise of ordinary care for the safety of its invitees, should have anticipated an accident of this kind in time to guard against it. If so, of course, it should have taken appropriate preventive steps.

The precedents advanced for the appellant do not persuade us. In Mears v. Kelley, 59 Ohio App. 159, 17 N.E.2d 386 (1938), the plaintiff was inundated and knocked down by a crowd stampeding to

seats in a theater after an usher had released a chain or cord behind which they had been kept at bay in the lobby until departing patrons vacated the aisle between the seats. In its opinion sustaining a verdict for the plaintiff the appellate court stressed the element of " 'crowd spirit' which always prevails * * * when managers and proprietors of places of amusement and other places, invite the public and thereby cause great crowds of people to be amassed together." We do not regard the factual situation as comparable. The customary waiting in a check-out line on the busiest day of the week would hardly be expected to produce a stampeding "crowd spirit."

In Walker v. Feltman, Fla., 111 So.2d 76 (Dist.Ct.App.1959), from which we have quoted, a merchant had advertised a sale on certain goods, limited to "50 pieces per item." Opening time found a large crowd of 100 or more "pushing and surging" to get in the front door, which was six feet wide. At the appointed hour an employe flung wide the gates and shouted, "Go!" Immediately thereupon a torrent of humanity spewed into the store like the stream from a fire hose and the unfortunate plaintiff, being up front, was propelled against the nearest display counter in the path of the avalanche. We view this case as another example of the stampede principle, not applicable here.

In Fortier v. Hibernian Bldg. Ass'n of Boston Highlands, 315 Mass. 446, 53 N.E. 2d 110 (1944), and Rawson v. Massachusetts Operating Co., 328 Mass. 558, 105 N.E.2d 220 (1952), the respective plaintiffs were injured by the actions of unruly boys or young men romping or otherwise misconducting themselves on the premises for some length of time—long enough to have been noticed and ejected—before the injuries occurred. There were no such premonitory activities in this case.

In the recent case of Rommel v. Louisville Shopping Center, Inc., Ky., 436 S.W. 2d 529 (1969), a child six years old was injured when he fell from a sliding apparatus being used by a throng of children at a shopping center. He said he was pushed off by another child. Affirming a judgment entered on a directed verdict for the defendant shopping center, this court held that the absence of supervision was not a causal factor and that there was no duty to provide supervision. Implicit in this result was the principle that in the absence of warning circumstances a sudden improvident act by another patron or customer is not reasonably foreseeable. "To hold that storekeepers should anticipate every collision between customers and anticipate every accident that might occur as a result of their joint or several negligent acts would render owners absolute insurers of the safety of all people on their property which, as we have pointed out, is not the law in this state." Otto v. Phillips, Ky., 299 S.W.2d 100, 103 (1957). See also Noonan v. Sheridan, 230 Ky. 162, 18 S.W.2d 976, 978 (1929).

We do not wish to belittle this case. It is not as clear and simple as might appear at first blush. Certainly it is not impossible for impatient people waiting in a check-out line to get sufficiently out of order to require protective action by the store personnel. As with most legal problems, it is just a matter of degree. Sometimes when a court sits down to write an opinion intended to serve as a practical guideline for the bar and bench it is confronted with the impossible mission of drawing a precise line by which day can be distinguished from night, a line we all know cannot really exist. In such a case a court of last resort can do no more than exercise its best judgment based on its collective experience. So it is here. Mrs. Palmer says the people in the lines were pushing and shoving. Her cart was knocked over. If there is one thing her case lacked, it was that her proof did not justify an inference that this condition

existed, in a substantial degree, long enough to require the store personnel to be aware of it and take preventive measures. We point out in this respect that "four or five minutes" prior to the accident there were only three people in the line she chose to take. Obviously, therefore, at the moment she entered the line it was not crowded. Obviously also the people standing in line behind her when the accident took place had been there for less than "four or five minutes." Their impatience and budding unruliness, if such there was, must have been ignited with startling suddenness indeed. We are of the opinion that the proprietor could not reasonably be held liable on this proof.

The judgment is affirmed.

All concur.