## GOMER E. HIGHLEY

### v.

## THE AMERICAN EXCHANGE NATIONAL BANK.

*Opinion filed April 17, 1900—Rehearing denied June 7, 1900.*

1. FRAUD—*judgment creditor may have previous colorable transfer set aside.* A judgment creditor may have a previous conveyance set aside as fraudulent where the transfer is merely colorable and a secret trust exists in favor of the debtor.

2. WITNESSES—*a party is not conclusively bound by statements of his witness.* The general rule that a party may not impeach the character of a witness he has voluntarily called is not infringed by the introduction of other testimony disproving the statements of such witness as to facts and circumstances involved.

3. EVIDENCE—*what will not overcome sheriff's return.* That it appears from the testimony in a creditor's bill proceeding that prior to the rendition of judgment the creditor had collateral security for the debt does not overcome the force of the sheriff's *nulla bona* return of the execution issued on the judgment.

4. The court reviews the evidence in this case at length, and holds that the assignment of stock sought to be set aside in this creditor's bill proceeding was merely colorable and that the real ownership remained in the debtor.

*Highley* v. *American Exchange Nat. Bank,* 86 Ill. App. 48, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

STEERE & FURBER, (W. W. GURLEY, and H. G. STONE, of counsel,) for appellant.

SWIFT, CAMPBELL & JONES, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The Appellate Court for the First District affirmed the decree of the superior court of Cook county entered on the hearing of a bill in chancery to which the appellant, Highley, and Charles D. Hauk and others were de-

fendants and the appellee bank complainant. The decree was rendered by the superior court, and affirmed by the Appellate Court, on the theory the appellee bank became the judgment creditor of said Charles D. Hauk and that execution had been returned *nulla bona* on said judgment; that said Hauk was the owner of certain shares of the capital stock of the Mutual Fuel and Gas Company, held by the Illinois Trust and Savings Bank as collateral security for certain indebtedness of Hauk to the bank; that the appellant claimed to have purchased the said stock from the said Hauk and to be the owner thereof; that such contracts of purchase of said stock by appellant, Highley, were but colorable and fraudulent, and inoperative as against the rights of the appellee as a judgment creditor of the said Hauk, and that the proceeds of the sale of the stock (the stock having been sold during the pendency of the proceeding by mutual agreement of all the parties and reduced to money) should be applied first to the payment of the amount due from Hauk to the said Illinois Trust and Savings Bank, the remainder to the discharge of the indebtedness from Hauk to the appellee bank. which had been reduced to judgment, as aforesaid,—that is, the bill was treated as a creditor's bill. The parties defendant to the bill (except appellant, Highley,) submitted to the decree of the superior court. Highley appealed to the Appellate Court, and to this court from an adverse decision of the Appellate Court.

We will consider the objections of appellant in the order presented in his brief.

First, appellant urges it did not appear the indebtedness of Hauk to the appellee bank was contracted prior to the alleged colorable transfer of the interest of Hauk in the stock to him, and that it is error to set aside an alleged, or even an actual, fraudulent transfer in favor of a creditor whose demand arose after the transfer had been made. In *Springer* v. *Bigford,* 160 Ill. 495, it was said (p. 500): "The rule is, that subsequent creditors cannot

have a conveyance set aside as fraudulent unless it is merely colorable and a secret trust exists in favor of the vendor, or it is made with a view of defrauding future creditors." If, then, the transfer in question was not a real transaction, but a mere pretense to enable Hauk to apparently dispossess himself of the ownership of the stock, the beneficial interest therein actually remaining in him, it is clear the objection of the appellant cannot be sustained. Whether such was the character of the transaction will be discussed in disposing of the second of appellant's objections.

Appellant's second objection is, the evidence is insufficient to sustain the finding that the transfer of the stock from Hauk to the appellant was merely colorable and fraudulent as to the appellee bank. The appellant was introduced as a witness by the appellee. The chancellor was fully justified in regarding his statements as to the purchase of the stock as improbable, unreasonable, and inconsistent with the view there was an actual sale and purchase of the stock. There were three hundred and eight shares of the stock. Two hundred and forty-eight shares had been deposited by Hauk in the Illinois Trust and Savings Bank as collateral security for indebtedness of Hauk to the bank, and sixty shares were afterwards issued and delivered to the bank under an arrangement which authorized the issuance of stock at par to holders of original stock. The appellant testified that in February, 1894, he purchased the two hundred and forty-eight shares then in the possession of the bank, and in September of the same year purchased sixty shares also then held by the bank; that he and Hauk were brothers-in-law and that Hauk made his home at his (witness') house; that he paid $2000 for the first block of stock; that he made the payment by his check drawn on his bank; that the check was returned to him in the usual course of business but that he did not know what became of it, but that he believed he had destroyed it, according to

his usual custom to destroy checks; that he had also destroyed the statement rendered to him by the bank on which he had drawn the check; that he did not have the check book from which the check was drawn; that it was his belief he had destroyed the check book at the end of the year, as that was his custom; that he had no account or memoranda of any kind relating to that payment and that he received nothing from Hauk showing the transfer to him; that he had no distinct remembrance of the time or place where the transaction occurred, but believed it was at his home; that the stock was not listed and had no market price; that he made no inquiry of any one about the value of the stock; that he did not go to the bank, where the stock was held' as collateral, to ascertain whether the stock was there or the amount of the debt it was pledged to secure; that he knew nothing about the terms of the pledge of the stock to the bank except what Hauk told him, and that Hauk stated to him he had borrowed something over $30,000 on the stock, and that he took Hauk's statement as to the number of shares; that Hauk then owed him $9800, and that he knew Hauk could not pay it at that time and that he made no effort to secure it. The statements of the witness as to the details of the purchase of the sixty shares of stock were substantially the same as those made as to the purchase of the other shares. Other testimony tended strongly to establish the alleged transfer of the stock was colorable, merely, and that the real ownership remained in Hauk. It was proven that after the alleged purchase by the appellant of the two hundred and forty-eight shares of stock, in February, 1894, the Illinois Trust and Savings Bank loaned to Hauk additional sums of money on the collateral security of the two hundred and forty-eight shares of stock aforesaid, as follows: August 14, 1894, $2250; September 12, 1894, $2250; November 3, 1894, $4500; that on December 31, 1894,—which, it is to be observed; was after the date of both alleged purchases

of the stock by the appellant,—all the notes which the bank held against Hauk,—seven in number,—bearing various dates from November 19, 1892, to November 3, 1894, were consolidated into one new note amounting to $37,-728.29, and upon the same date the bank made an additional loan to Hauk of $530.02, and took from him a separate note therefor, which was paid January 25, 1895, and all the three hundred and eight shares of stock aforesaid were held by the bank as collateral security for each and all of the aforesaid notes. It further appeared the dividends accruing on the stock were collected by the savings bank and applied in payment of the indebtedness due from Hauk, without any discrimination between loans made before or after the alleged purchase of the stock by the appellant.

Mr. Orr, cashier of the appellee bank, testified that on the 19th day of March, 1895, he sought to procure said Hauk to assign his interest in these shares of stock which still remained in the Illinois Trust and Savings Bank, to the appellee bank as security for Hauk's indebtedness to the appellee bank; that Hauk told him he had assigned his interest in that stock to the appellant to secure the sum of $9800 which he owed to Highley; that at witness' request Hauk brought the appellant, Highley, to the appellee bank and an interview occurred there between the witness and the appellant, in which the witness related to the appellant the conversation which had occurred between the witness and Hauk, which was to the effect that appellant held an assignment of the stock to secure the said sum of $9800 said to be due from Hauk to appellant. The witness testified he then asked the appellant to waive his claim on the stock as security for Hauk's indebtedness and to take instead certain securities based on the building and leasehold estate of the Rossmore Hotel, and that Highley refused to make the proposed change of securities, but did not make any denial of the statements made by Hauk with reference to the interest

or right of appellant in the stock in question. It further appeared that on the day of the conversation just referred to between the witness Orr and the appellant and Hauk, Hauk went to the Illinois Trust and Savings Bank and there caused formal assignment of all the stock to be made from Hauk to the appellant.

There is no force in the contention of the appellant the testimony of Mr. Orr was intended to impeach the appellant, whom the appellee had introduced as a witness, and that for that reason the testimony of Orr should have been excluded. A party is not conclusively bound by the statements made by a witness whom he has called to give testimony. He may call another witness to disprove such statements. (*Rindskoph & Co.* v. *Kuder*, 145 Ill. 607.) The general rule a party may not impeach the character of a witness he has voluntarily introduced is not infringed by the introduction of other testimony disproving the statements of such witness as to facts and circumstances involved in the hearing.

There was some evidence tending to show, and appellant insists was sufficient to establish, that Hauk advised the bank by letter, in April, 1894, that he had sold the two hundred and forty-eight shares of stock to appellant. Appellee contends it was not proven the letter was received by the bank. That view is the most probable in view of the conduct of both Hauk and the bank after the date of the letter. Hauk after that date continued to use the stock as security for loans obtained from the bank and the bank accepted the stock as security for such loans, which is irreconcilable with the view Hauk had notified the bank that he had no further interest in the stock and that it belonged to the appellant.

We think the chancellor was fully justified in reaching the conclusion the transaction between Highley, the appellant, and Hauk was merely colorable, and that the beneficial interest and real ownership of the stock remained in Hauk.

It appeared in the testimony of the witness Orr that the appellee bank held, as security for the indebtedness of Hauk, certain bonds secured by mortgage on the Rossmore Hotel property. Appellant contends it was essential to the right of the appellee bank to maintain a creditor's bill, it should have been proven that it did not have those bonds when the bill was filed. The remarks with relation to the bonds was but incidental, and the subject was not further pursued or referred to by either party. It was proven that the appellee bank obtained a judgment against Hauk after the time referred to by Orr when testifying as a witness relative to the bonds, and that execution on that judgment was afterwards returned *nulla bona.* The return of the sheriff on the execution establishes *prima facie* that Hauk had no property subject to levy at that time. The bill was filed at a later date, and the mere fact the bank had the bonds previous to the rendition of the judgment is not sufficient to overcome the return of the officer.

The decree will be affirmed.         *Decree affirmed.*