JOHN C. STOKES *et al.* Appellants, *vs.* ELIZA STOKES, Appellee.

*Opinion filed June 16, 1909.*

1. HUSBAND AND WIFE—*wife may by contract with husband release to him all her rights in his estate.* A wife may, by written contract with her husband, based upon a valuable consideration, release to him her rights in his property and estate and thereby extinguish all her rights as widow, including the right of dower, and the fact that they are living apart at the time does not affect the validity of the contract.

2. SAME—*mere fact that contract is inequitable does not justify setting it aside.* The mere fact that a post-nuptial contract between husband and wife releasing her rights as widow is not an equitable settlement for her is not ground for setting it aside, in the absence of any question of fraud, misrepresentation or concealment.

3. SAME—*what does not fix meaning of contract nor affect its binding force.* Where a post-nuptial contract made between husband and wife while they were living apart does not provide that it shall be abrogated if they live together again, the mere fact that one of the wife's attorneys, who assisted in drawing the contract, interpreted the contract to her in that way without the knowledge of the other contracting party does not fix the meaning of the contract nor affect its binding force.

4. SAME—*when provisions of an ante-nuptial contract are not abrogated.* If a post-nuptial contract is intended to abrogate a valid ante-nuptial contract but the post-nuptial contract is void and never takes effect, the ante-nuptial contract is not abrogated but remains in force; and if it is intended that the post-nuptial contract shall be substituted for the ante-nuptial one on condition that the parties continue to live apart and that it shall cease to be a contract if the parties subsequently live together, then the ante-nuptial contract is merely suspended while the other is in force.

5. SAME—*wife is not entitled to recover for services in caring for husband.* A wife is not entitled, under the law, to recover for services for care and attention to the husband while they are living together.

6. SAME—*wife is not a competent witness as against husband's heirs.* As against the heirs of her husband a wife is not a competent witness in her own behalf to tell what took place at the time of the execution of a post-nuptial contract.

APPEAL from the Circuit Court of White county; the Hon. P. A. PEARCE, Judge, presiding.

BAINUM & PARISH, for appellants:

A wife may, for a valuable consideration, enter into a binding contract with her husband releasing to him all her right, title and interest in his property, including her contingent right of dower and her interest as heir. *Luttrell* v. *Boggs,* 168 Ill. 361; *Carling* v. *Peebles,* 215 id. 96.

The fact that husband and wife live apart is not material and will not invalidate the contract. *Luttrell* v. *Boggs,* 168 Ill. 361.

The complainant in the cross-bill was not a competent witness to testify in her own behalf as to what was said or took place at the time the contract was signed and during the time the agreement was made. *Taylor* v. *Taylor,* 144 Ill. 436; *Yarde* v. *Yarde,* 187 id. 636.

A wife cannot set aside a contract between herself and deceased husband where she had full knowledge of her husband's estate and the provisions of the contract were proportionate to the value of her husband's estate and the contract equitable. *Taylor* v. *Taylor,* 144 Ill. 435; *Yarde* v. *Yarde,* 187 id. 636; *Warner* v. *Warner,* 235 id. 448.

A complete acceptance on the part of the wife of all of the benefits of the contract is a complete ratification of it on her part. *Weaver* v. *Weaver,* 109 Ill. 225; *Warner* v. *Warner,* 235 id. 448.

A contract can be set aside only if the party relieved restores what he has received. *Ronan* v. *Bluhm,* 173 Ill. 277.

Joe A. Pearce, for appellee:

A widow cannot be deprived of her dower otherwise than by her voluntary conveyance thereof in the mode prescribed by the statute. *Crum* v. *Sawyer,* 132 Ill. 443; *Sloan* v. *Williams,* 138 id. 43; *Francisco* v. *Hendricks,* 28 id. 64.

A settlement made after marriage, between husband and wife, to be good must provide the settlor with a fair and reasonable consideration in value for the thing settled. 2 Kent's Com. (8th ed.) 166.

If the provision made for the wife is disproportionate to the husband's means, the burden is upon those claiming under the husband to prove that the wife had full knowledge of all the facts and circumstances which materially affect the contract. *Warner* v. *Warner,* 235 Ill. 448; *Taylor* v. *Taylor,* 144 id. 436.

On the principles of equity and justice a contract, to be obligatory, must be justly and fairly made. There should be reciprocity of candor and fairness. *Lockridge* v. *Foster,* 4 Scam. 569; *Mitchell* v. *McDougall,* 62 Ill. 498.

It is not indispensable to the right to rescind a contract that a party guilty of making a misrepresentation knew it was false or was ignorant of the fact stated, provided it was material and the other party had a right to rely upon it, did so, and was deceived. *Allen* v. *Hart,* 72 Ill. 104.

Mr. Justice Cartwright delivered the opinion of the court:

John C. Stokes, one of the appellants, filed his bill in the circuit court of White county for partition, and therein alleged that his father, William H. Stokes, died on or about July 23, 1908, leaving the appellee, Eliza Stokes, his widow, and seven children and three grandchildren, his only heirs-at-law; that at the time of his death he was seized in fee simple of a lot in Carmi and about 252 acres of land in said county, and that the appellee had by contract with said

William H. Stokes released to him all her interest and right of homestead and dower in said premises in consideration of $1650 and one horse paid and delivered to her. The appellee answered, denying that she had released her dower rights and interests in the land and estate, and filed a cross-bill, in which she averred that the contract purporting to release her dower rights and interests in the land and estate was void; that when it was executed she and her husband were living apart and she was about to bring an action against him for separate maintenance; that the appellant John C. Stokes, as conservator for her husband, entered into the contract with her; that she was in great distress of mind and entered into and signed the contract without knowing the purport thereof, not being able to read and depending upon others for an explanation of the same, and that after the contract was made her husband came back and lived with her until his death, whereby the contract was abrogated. The court heard the evidence and entered a decree sustaining the cross-bill. The court by the decree found that the contract was void and of no effect for the reasons set out in the cross-bill, and for the further reason that it was not an equitable settlement between the parties. The court having found that the contract was void in its inception and of no force and effect as a contract, further found that it had been abrogated by the act of the parties in afterward living together as husband and wife. Other findings of the decree were, that the appellee was entitled to all her statutory rights in the personal estate of her deceased husband and dower in the real estate, and that none of the premises were occupied as a homestead and she was not entitled to any homestead right. It was decreed that she should be charged with $1650, the amount paid her under the contract, against her claim in the personal estate; that she should not be charged with any interest on said sum, for the reason that she had earned the same in the care and attention bestowed upon her husband, and that

partition of the premises should be made in accordance with the findings. Appellants are the defendants in the cross-bill and the complainants in the original bill.

The following facts were proved on the hearing: On March 21, 1899, William H. Stokes, aged about eighty years, married the appellee, Eliza Stokes, who was nearly seventy years old. Seven days before the marriage they entered into an ante-nuptial contract, by which she was to receive $2000 upon his death in lieu of all her statutory rights as widow. In December, 1903, he was adjudged a feeble-minded person by the county court of White county, and the appellant John C. Stokes, his son, was appointed conservator and acted as such until his death. Shortly after said proceeding there was an estrangement between appellee and her said husband, and he left her and they lived separate and apart. In September, 1904, she was considering bringing an action for separate maintenance. The appellant John C. Stokes, acting as conservator, and appellee, undertook a settlement of the affairs of the parties and they were each assisted by counsel. He had an attorney, and she had Judge C. S. Conger, Judge James C. Pearce and Isaac T. Spence, all of whom were lawyers of many years' practice and learned in the law. The matter was debated in the offices of the respective attorneys and the terms of the contract were discussed for about a week. The parties disagreed about various things but finally came to an understanding, and the contract was drawn by one of the attorneys and submitted to all. Appellee understood that it was a settlement of the differences between her and her husband and fixed the amount she would receive in lieu of the ante-nuptial contract. It recited that the parties had made a final settlement of all their business matters and differences, and appellee acknowledged the payment to her of $1650 in money and one horse, in consideration of which she released all her interest of every kind and nature whatsoever, and especially her right of dower and homestead,

and covenanted not to sue for, claim or demand any right of dower or homestead or any other claim against her husband's estate, and renounced any and all rights under the ante-nuptial contract. She could read, but the contract was signed with her mark and witnessed by one of her attorneys. It was signed with the name of William H. Stokes, by his conservator, and was presented to and approved by the county court. There was a dispute about some of the things in the house, and her attorney, Isaac T. Spence, helped to divide the personal effects. The conservator would not pay the money until the things were divided, and he then gave a check for the amount of the contract, with which appellee bought a farm. A few months after the contract was made William H. Stokes went back and lived with the appellee until his death, and during that time the conservator furnished his clothing, paid his doctor bills and supplied all his wants except board and personal attention, for which he paid the appellee six dollars per week. The real estate owned by William H. Stokes at the time of making the contract was worth about $25 an acre and his whole estate amounted to about $10,000. The land has increased largely in value and is now worth from $35 to $40 per acre. The attorneys for appellee all testified and were of the opinion that she understood the contract, but Isaac T. Spence testified that he advised her to accept the consideration as a final settlement of all the differences between her and her husband in view of the situation as it then existed, but if they afterwards lived together the contract would be of no force. His understanding was that the new contract was a settlement of the ante-nuptial contract if the parties continued to live separate and apart but that it would be abrogated by their again living together.

We are unable to affirm the decree in this case upon any theory. A wife may by a written contract with her husband, based upon a valuable consideration, release to him her rights in his property and estate and thereby extin-

guish all her rights as widow, including the right of dower, and the fact that the parties are living separate and apart does not affect the validity of the contract. (*Luttrell* v. *Boggs,* 168 Ill. 361; *Carling* v. *Peebles,* 215 id. 96.) There was no evidence tending in any degree to support the assertion of appellee that she did not understand the terms of the contract or that she executed it in ignorance of what it contained. The court held, in accordance with the law, that she was not a competent witness to testify in her own behalf as to what took place at the time the contract was signed, for the reason that the other parties were defending as heirs of her deceased husband. (*Yarde* v. *Yarde,* 187 Ill. 636.) She could read, and the terms of the contract were discussed for several days, so that they were fully understood by her, and the contract was explained to her by her attorneys. The interpretation of the contract by one of her attorneys, unknown to the other contracting party, would not fix the meaning of the contract or affect its binding force. The contract was not in consideration of the parties living separate and apart, and it contained no such condition and no allusion to the fact that they were living in that way. There is nothing in the contract from which it could be said that it was to be of no force if the parties should again live together.

The finding that the contract was not an equitable settlement of the affairs of William H. Stokes, in the absence of fraud, misrepresentation or concealment, would not justify setting aside the contract if the finding had been supported by the evidence. If every contract, ante-nuptial or post-nuptial, is invalid where the wife does not receive as much as she would under the statute, such contracts might as well be dispensed with, since the purpose of such a contract is to make a provision different from that provided by the statute. The finding, however, is unsupported by the evidence. There is no question of the validity of the ante-nuptial contract and no reason appears why it was not en-

forcible. The entire estate of William H. Stokes amounted to about $10,000, and he had seven children and three grandchildren with claims upon him. The contract that was set aside was executed to take the place of the ante-nuptial contract, and if the contract substituted was void and never took effect, it would not displace the valid ante-nuptial contract and the appellee would not be entitled to dower. If the understanding had been, according to the view of Mr. Spence, that this contract was substituted for the ante-nuptial contract on condition that the parties continued to live apart or so long as they should so live, and ceased to be a contract when they again lived together, the ante-nuptial contract would not be destroyed but only suspended while this contract remained in force. The contract, however, as we have already said, will not bear this construction. By the ante-nuptial contract the appellee was to receive $2000 after the death of her husband, and by the substituted contract she received $1650 and the horse during the lifetime of her husband and some years before the $2000 would have become due. While she was not entitled to dower under either contract, we find no ground upon which the second contract could be set aside.

The decree that appellee was entitled to all her statutory rights as widow in the personal estate of her deceased husband and that $1650 should be charged to her against her claim in the personal estate was beyond the scope of the litigation, and the finding that she had earned the interest on the money by the care and attention bestowed upon her husband while they were living together was contrary to the evidence, which showed that she was paid for the services, and also against the law, which did not permit her to recover for such services.

The decree of the circuit court is reversed and the cause is remanded, with directions to dismiss the cross-bill and to decree a partition in accordance with the prayer of the original bill.    *Reversed and remanded, with directions.*