(No. 36148.

HARRIETT WISNIEWSKI, Appellee, *vs.* BRUNO SHIMASHUS *et al.,* Appellants.

*Opinion filed June 14, 1961.—Rehearing denied September 20, 1961.*

A. DENISON WEAVER, THOMAS M. POYNTON, A. ED-
MUND PETERSON, and CARL FAUST, all of Chicago, for ap-
pellants.

NAT M. KAHN, and BASINSKI & BASINSKI, both of Chi-
cago, for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the
court:

Plaintiff, Harriett Wisniewski, brought this action to
establish a constructive trust on a parcel of real estate held by

the defendants, Bruno Shimashus and Beatrice Shimashus. Other matters, pertaining to a savings account, have been rendered moot. The theory of plaintiff's cause is that she was defrauded out of her interest in the realty by her husband, Joseph Wisniewski, deceased, who was the defendants' predecessor in interest. The matter was referred to a master who, upon hearing plaintiff's evidence and the defendants not having offered any, recommended that defendants convey an undivided one-half interest in the property to plaintiff, as the proofs and law showed she occupied the position of a tenant-in-common with the defendants. The master found that plaintiff never intended to part with her interest therein. Both parties filed exceptions to the master's report. The chancellor sustained the plaintiff's objections, overruled defendants' objections, and entered a decree finding against the master's recommendations and holding that defendants held the entire fee-simple title for the plaintiff as trustees under a constructive trust. A freehold being involved, the defendants have appealed directly to this court.

The following facts are essentially not in dispute. The plaintiff, Harriett Wisniewski, is the widow of Joseph Wisniewski, hereinafter referred to as the decedent. The plaintiff, apart from being able to write her name, does not read or write English. She speaks and reads Polish. The defendants, Bruno and Beatrice Shimashus, are the son-in-law and adult daughter of the decedent by a previous marriage. Plaintiff, too, has grown children by an earlier marriage. The plaintiff and the decedent were married on May 9, 1953, at which time both were well over 50 years of age. It was a second marriage for both of them. Following their marriage, plaintiff and decedent lived together with the plaintiff's two adult daughters in a residence owned by decedent. In June of 1954, after the plaintiff and decedent had been wed for approximately one year, decedent sold this property to third parties, with the plaintiff joining in the conveyance releasing her inchoate dower right. At this time

decedent purportedly promised plaintiff, "Hattie, we belong together. I buy house and you and me belong to house."

In August of 1954, after decedent sold his property, plaintiff's daughters bought a home on contract with their own funds. The plaintiff and her two daughters lived together in this home at 5229 South Carpenter Street, Chicago, Illinois.

It appears that decedent did not at this time live with plaintiff or her daughters because marital difficulties had arisen. Plaintiff and decedent became separated for several months, during which time decedent provided no support. On September 21, 1954, plaintiff filed a suit against the decedent alleging that decedent had fraudulently induced her to release her right of dower; the action was subsequently amended by plaintiff to include separate maintenance. During the pendency of that action, the record suggests that plaintiff intended to amend her suit to one for divorce. On April 1, 1955, she and her husband stipulated or entered into the following agreement:

### "STIPULATION

"1. It is hereby stipulated and agreed by and between the parties hereto and by and through their respective attorneys of record that the above entitled cause may be heard and come on for hearing as an uncontested matter on the amended complaint of the plaintiff for divorce, the answer thereto of the defendant, and upon this stipulation.

"2. That the Plaintiff and Defendant will and shall upon the hearing of this cause, permanently waive alimony, and any and all other claim that they now have, have had, or may or might be entitled to against each other arising out of the intermarriage of the parties hereto.

"3. That each, the plaintiff and the defendant agree to hold each other harmless for bills contracted by themselves.

"4. That the defendant agrees to pay the sum of $400.00 attorney's fees to Basinski, Basinski & Basinski as full payment of all his obligation as to attorney's fees and court costs in the above entitled cause; that said $400.00 must be paid on or before the time of entry of a possible decree in the above entitled cause.

"5. That the defendant agrees to pay the plaintiff the sum of $3,000.00 as her full distributive share in any and all property she may now have or might have had in the future arising from and

during the intermarriage of the parties hereto; that said sum is payment in lieu of alimony which plaintiff has expressly waived. That defendant agrees to pay said $3,000.00 to plaintiff on or before the entry of a possible decree (sic.) divorce in the above entitled cause.

"6. That on payment of the aforesaid $3,000.00 plaintiff is permanently barred from seeking any amount or interest in the property both personal and real, of the defendant whether in the form of litigation or otherwise.

"7. That paragraph No. 2 to 6, inclusive, of the stipulation be incorporated in any decree that may be awarded Plaintiff upon the hearing of this cause, subject to the approval of the Court.

/s/ Hettei Wisniewski
/s/ Joseph Wiesniewski".

On the same date of the "Stipulation," decedent paid to plaintiff's attorneys the stated $3000, together with the attorneys' fees called for. The record does not indicate that the count for separate maintenance had ever been amended to one for divorce and alimony. The suit itself was dismissed on March 31, 1955.

Subsequent to this, plaintiff and decedent became reconciled. On May 6, 1955, at the offices of plaintiff's attorneys, plaintiff received a check drawn upon her attorneys in the sum of $3000. Present on this occasion were plaintiff, decedent, plaintiff's attorneys, and a clerk-secretary of their office, Ruth Skrzypczynski. The latter testified, over objection, that she overheard decedent state to plaintiff's attorneys, "Mrs. Wisniewski can take the $3000.00 and we will go back together, live together, and we will buy—I will buy property, two flats, in our names. When I die she will have the property. When she die I will have the property."

The plaintiff, in testifying relative to the reconcilation and her receiving and being permitted to retain the $3000, stated that she had received no support for seven months and discussed this with decedent; that decedent also said he would buy a house,—"the house belong to you and me."

The decedent then went back to live with plaintiff and her daughters at 5229 South Carpenter Street, where he lived until his death on September 21, 1955.

Some time in June of 1955, plaintiff and decedent went to the home of Sophia and Peter Klus to discuss the purchase of the latters' property. Talks relative to the purchase were had on two or three occasions. Sophia Klus, over objection, testified that decedent at the time of the first meeting, then stated he was buying "the house for him and wife." Two or three weeks after the first discussion, decedent and plaintiff, on July 14, 1955, went to the law offices of Stanislaus Krzeminski, to sign a contract of purchase of the Klus's real estate. This is the property involved in this litigation. Krzeminski was to represent the buyers and sellers in this transaction, although he was known to the sellers only, previous to this transaction. The contract appears to be printed on both sides of a single sheet of paper. On its face the contract names as purchasers, "Joseph Wisniewski and Harriet Wisniewski, his wife, as joint tenants." The reverse side was signed by the sellers, Peter Klus and Sophia Klus, and by the buyers, plaintiff and decedent. About five inches below these signatures, plaintiff and decedent again signed the contract in blank on penciled lines drawn by the attorney, Krzeminski. It is not disputed that this second set of plaintiff's and decedent's signatures were signed in blank with no words of any kind preceding these signatures. It is further undisputed that decedent provided the funds for the purchase price. The record also evidences a warranty deed dated July 14, 1955, and acknowledged on the same date by Krzeminski, conveying the property from Mr. and Mrs. Klus to the defendants, Bruno Shimashus and Beatrice Shimashus, as joint tenants. The deed was recorded on August 12, 1955.

Subsequent to July 14th, the following words were typed above the bottom set of plaintiff's and decedent's signatures on the contract:

"We, the undersigned, do hereby assign to Bruno Shimashus and Beatrice Shimashus, his wife, in joint tenancy, all of our right, title and interest in and to the contract of sale set forth on the

reverse side hereof and direct the sellers therein to execute their deed to said assignees in our place and stead.

"Dated at Chicago, Illinois, this 9th day of August, 1955."

After the death of Joseph Wisniewski in September of 1955, a guarantee policy was found among decedent's effects showing title of the real estate in question in defendants, as joint tenants. It is plaintiff's contention that it was on that occasion she first learned she was not the owner of the real estate in question, and of the manner whereby her signature had been obtained to an assignment provision. It is further undisputed that the plaintiff did not know or encounter the defendants until after the death of her husband.

One issue raised is whether the property-settlement agreement entered into between plaintiff and decedent on April 1, 1955, is dispositive of plaintiff's assertion of interest in the subject property. By the terms of the agreement it is clearly evident the parties contemplated and made a material factor of consideration the obtaining of a divorce and the attendant alimony or support rights of the plaintiff. Inasmuch as no divorce in fact was consummated, such agreement was of no force upon resumption by the plaintiff and decedent of their marital relations. Our decisions in *Stokes* v. *Stokes,* 240 Ill. 330, 336, and *Purcell* v. *Weasel,* 12 Ill.2d 356, are readily distinguishable, as the agreements therein construed were not in consideration of, or conditioned upon, a nonoccurring material event or factor.

The next issues are, whether the evidence warrants the chancellor's conclusion that decedent orally promised plaintiff to buy a parcel of property where they would live, with title in both their names as joint tenants with a right of survivorship and, secondly, whether such promise prevented decedent from ever conveying his interest or otherwise severing the joint tenancy.

Assuming, without deciding, that an agreement by decedent to place property in a joint tenancy consisting of himself and his wife lacked consideration, the presumption

of gift of such interest to her has not been rebutted. The circumstance that decedent paid the purchase price does not, in the absence of anything more, make him the equitable owner of her interest. (*Baker* v. *Baker*, 412 Ill. 511.) As to the second issue, while oral agreements may be made and can be enforced to prevent or remedy an act of severance by a joint tenant breaching such agreement, (*cf. Bydalek* v. *Bydalek*, 396 Ill. 65; *Stromsen* v. *Stromsen*, 397 Ill. 260,) the burden is upon the person alleging the existence of the agreement to make proof of same. The master saw and heard the witnesses testify, and, although his conclusions on controverted facts do not carry the weight of a jury verdict nor of the findings of a chancellor who has heard the evidence, they are, nevertheless, entitled to due consideration. (*Uksas* v. *Zelensky*, 21 Ill.2d 303.) Having reviewed the record, we are in accord with the conclusion of the master that the evidence lacks the clarity necessary to find other than the existence of a simple joint tenancy. This being the fact, there was thus no contractual restraint upon decedent which would prevent an act of severance or a conveyance of his interest in the property. *Stromsen* v. *Stromsen*, 397 Ill. 260; *cf., Bydalek* v. *Bydalek*, 396 Ill. 65.

We have now reached the issue whether plaintiff knowingly consented and agreed to the assignment of her joint interest in the property. Pertinent thereto is the following evidence:

Called to testify by the plaintiff, Krzeminski stated on cross and redirect examination that he was informed by the decedent in the presence of the plaintiff and Mr. and Mrs. Klus on July 14, 1955, that title to the property was to be vested in decedent's daughter and son-in-law, the defendants herein, as joint tenants, that decedent at that time stated in Polish to the plaintiff, "Before you married me, you had some property which you conveyed to your children, so long as you have taken care of your children, I see no reason for me not to take care of my children", that he then

explained to both decedent and plaintiff in the presence of one another that it would be necessary to execute an assignment and a direction upon the sellers to convey the property to the defendants, and that after this had been accomplished, they no longer would have an interest in the property. He testified that both the plaintiff and decedent stated they understood and were satisfied; that he informed them it would be necessary that they execute the assignment in blank as he was busy and did not have the time to complete the actual language at that time. He saw the Kluses, plaintiff, and decedent sign the face of the contract. He then, on the reverse side, had plaintiff and decedent again sign their names above penciled lines which he had drawn. The witness further testified that he inserted the actual language of assignment the following day, July 15th, outside the presence of plaintiff and decedent.

Peter Klus testified that he heard no conversation between plaintiff and decedent about family business at Krzeminski's office, that when he signed the deed he saw only his own name on it, and that Krzeminski told him where to sign. The testimony of Sophia Klus, over objection, reveals that Krzeminski stated at the time the deed was signed that such deed was to plaintiff and decedent and that she never knew the defendants. The duplicate original of the contract of sale which was given to the Kluses does not contain the assignment provisions or the signatures of plaintiff or decedent on the reverse side. Mrs. Klus can sign her name in English but she cannot read or write English.

The plaintiff, over objection, testified that on July 14, 1955, while she and decedent were at the offices of attorney Krzeminski to sign the contract, decedent told her, relative to the property about to be purchased, "It belong to us. You like my wife and belong to us, the house; me and you. Nobody else." That the house would be put in both their names, "The house stay together, you and me." That it was

for this reason she signed the contract in the two places at the direction of her husband and Krzeminski. She further testified that she had never owned any real estate. This fact was corroborated by Genevieve Koscielski, the plaintiff's daughter.

Various discrepancies and ambiguities of material fact are patent. The testimony of Krzeminski as to the conversation of decedent and plaintiff, and the assent of the plaintiff to the assignment of her interest, is in sharp contrast to the plaintiff's testimony. That no such conversation took place and that the conveyance was intended to be to the plaintiff and decedent is corroborated by Mr. and Mrs. Klus.

In contrast to decedent's avowed purpose for the assignment to have taken care of his children because the plaintiff had conveyed some property to her children, is the unrefuted testimony of the plaintiff and her daughter that the plaintiff had never owned any property. Moreover, although the contract was dated July 14, 1955, and Krzeminski testified he inserted the assignment provision the next day, the purported assignment of contract right is inexplicably dated August 9, 1955. The date of August 9th appears to have been the date of the closing, at which time it is undisputed plaintiff was not present. Added to the foregoing is the unexplained fact that the deed prepared by Krzeminski, naming defendants, is dated and acknowledged by him on July 14, 1955, which is the day the contract was signed. There thus appears to be an aura of uncertainty and doubt surrounding defendants' explanation for the signatures in blank and the subsequent insertion of the assignment provision.

Clearly, here again, the credibility of the witness is a crucial factor. The master's finding, in which the chancellor concurred, that plaintiff signed the reverse side of the contract innocently and at the request of her husband, without any intention upon her part to convey any of her interest in the property, is entitled to due consideration. The

basis of such finding is distinctly supported by clear, convincing and unmistakable proof, when viewed within the framework of uncontradicted testimony, indicating an expressed intention of the decedent over a period of time to place property in joint tenancy with the plaintiff; that the contract of purchase named plaintiff as a joint owner; and that no apparent friendship, affinity, or obligation, moral or otherwise, existed between plaintiff and defendants. They had never met or spoken prior to decedent's death.

We now, therefore, consider the effect to be given the insertion of the assignment provision. While in many instances a material alteration made in an instrument after delivery will render such instrument as altered totally void, (*e.g., Hayes* v. *Wagner,* 220 Ill. 256; *Cities Service Oil Co.* v. *Viering,* 404 Ill. 538,) this court has held that there may be facts connected with some alterations which will justify giving them effect. *E.g., Standard Trust and Savings Bank* v. *Fernow,* 317 Ill. 325, 331; *Wagner* v. *McClay,* 306 Ill. 560; *Prettyman* v. *Goodrich,* 23 Ill. 270.

In *Prettyman* v. *Goodrich,* 23 Ill. 270, a husband and wife executed and delivered a mortgage. After delivery, a broadened land description including additional realty was inserted therein as additional security with the knowledge and consent of the husband, but not the wife. The husband then subsequently conveyed the additionally included lands to a third person. The argument was made that the mortgage was rendered void by reason of the alterations made, so as to vest the husband's title in his subsequent grantee, unencumbered by the mortgage. This court rejected that argument and found that while the alteration was void as to the wife, it was binding upon the husband. We find apposite this court's decision in the *Prettyman case,* and hold that the deed delivered to defendants, pursuant to the inserted assignment provision of the contract, expressed the clear intention of decedent to make a valid conveyance of his interest. Delivery of decedent's interest having been

made, a severance of the joint tenancy was effected. (*Klouda* v. *Pechousek*, 414 Ill. 75.) As previously stated, the decedent was under no obligation to plaintiff to refrain from conveying his interest in the property. The attendant consequence of a conveyance by one joint tenant effecting a severance and thereby rendering the grantee a tenant in common with the remaining joint tenant, needs little comment. *E.g., Porter* v. *Porter,* 381 Ill. 322.·

Defendants have also suggested error in that plaintiff should not have been permitted to impeach her own witness Krzeminski with the testimony of other witnesses including the plaintiff. A party is not conclusively bound by the statements of a witness whom he has called to give testimony. He may call another witness to disprove such statements. The general rule that a party may not impeach a witness he has voluntarily introduced is not infringed by the introduction of other testimony disproving the statements of such witness as to the facts and circumstances involved in the hearing. *Highley* v. *American Exchange Nat. Bank,* 185 Ill. 565.

It is our opinion that the evidence supports the master's findings, and that the conclusion of the chancellor, who imposed a constructive trust for the benefit of the plaintiff upon the whole of the property, is contrary to the law and the evidence. Consequently, the decree entered thereon, requiring defendants to convey the entire property to the plaintiff, must be reversed. We find that the defendants shall convey to the plaintiff an undivided one-half interest in the property and shall account to the plaintiff for one-half of the rentals they have derived from the said real estate since August 9, 1955, and each are to share the costs of these proceedings equally.

*Reversed and remanded, with directions.*