Carolyn Sue White O'ROARK, Appellant,

v.

Alex GERGLEY and Irvin Gergley, d/b/a Alex's Department Store, Appellees.

Court of Appeals of Kentucky.

July 27, 1973.

G. E. Reams, John A. Doyle, Harlan, for appellant.

William A. Rice, Rice & Huff, Harlan, for appellees.

PALMORE, Chief Justice.

The appellant, Carolyn White O'Roark, sued Alex and Irvin Gergley, d/b/a Alex's Department Store, for personal injuries she claims to have received when an employe of the store pushed her to the floor. She appeals from a judgment entered pursuant to a directed verdict for the defendants at the close of her evidence.

At the time of the injury Carolyn was 18 years of age. She was in the company of her mother, Reva White, and an older sister, Shirley Brock. According to the testimony, their purpose in entering the defendants' store was for Mrs. White to look for some clothing for Carolyn. Just inside the entrance they met Pauline Robinson, a saleslady, with whom they were acquainted, and Mrs. White told her what they wanted. As they made their way back into the store Carolyn led the way and Pauline fell in behind her, put both hands on Carolyn's shoulders, and began shoving her, saying "Straighten up, Carolyn, straighten up." The third time Pauline said this she gave Carolyn a harder shove and caused her to fall to the floor on her knees.

■ The ground on which a verdict was directed is the familiar principle that when an employe steps outside the scope of his duties and indulges in some act of a personal nature his employer will not be held responsible in the absence of reasonable forewarning. See Creamer v. Kroger Grocery and Baking Co., 260 Ky. 544, 86 S. W.2d 288 (1935). The problem in this case is not one of legal principle, but of fact. Assuming (though appellant contends otherwise) that the conduct of the employe was not within the scope of her employment, the question is whether there was any substantial evidence upon which the jury could have found that the employ-

er had enough notice in advance to require preventive action.

One of the defendants was present in the store and was in a position to see what took place. We quote from the testimony as follows:

*Carolyn O'Roark (plaintiff):*

Q- How far back into the store had you got, when Pauline first put her hand on your shoulder and pulled you back and told you to straighten up?

A- To the cash register.

Q- Were Mr. and Mrs. Gergley standing near the cash register?

A- Mr. Gergley was standing up at the cash register or beside of it, and Mrs. Gergley was sitting down.

Q- Was he in position to have seen what was going on?

A- Yes, he was.

Q- There was nothing to keep him from it?

A- No.

Q- How far back in the store had you got when you actually fell?

A- To the cash register.

(cross-examination)

Q- Now. I believe, you claim, that you went into Alex Department Store and started back through the store and Pauline Robinson took you by your shoulders and shoved you twice, telling you to straighten up, is that right? Leave out the third time. She first shoved you twice.

A- Yes.

Q- The third time, she shoved you real hard, is that right?

A- Yes, sir.

Q- That is the time you fell down to the floor?

A- Yes, sir.

*Reva White*

A- We got kindly in a line, Carolyn was in front of me, Pauline got behind Carolyn, I was behind Pauline and my daughter, Shirley, was behind me, and we started on back through the store, and when Pauline fell in behind Carolyn, she put both hands on Carolyn's shoulders. It was real hot that day. She fell in behind Carolyn, and she was saying, "Straighten up, Carolyn, straighten up." She said it the third time. We were at the register where Mr. & Mrs. Gergley were. It turned over this way (indicates) to go over where the clothes were. We turned to the right. When she said it the third time, she gave Carolyn a shove and Carolyn hit the floor and they all laughed, and Carolyn turned around and said "Mommy, did you hear my knee?" I said, "Yes, Carolyn, I did."

.     .     .     .     .     .

Q- Just where was Carolyn when Pauline Robinson first put her hands on her shoulders and told her to straighten up?

A- It was just after we entered the door, something, like a counter at the front, or used to be, I guess there is now. Pauline was standing in front of that, and just after we got in the door and I told her what we wanted, we got in line and she fell in behind Carolyn.

Q- At the time, Pauline Robinson first put her hands on Carolyn's shoulders, was there anything to keep Mr. Gergley from seeing what was taking place?

A- I wouldn't think so. He was standing up, unless he was looking at

people. I know nothing that kept him from seeing her fall. I don't know whether he was looking at Pauline when she placed her hands on her shoulders.

Q- Both were in plain view of Mr. Gergley?

A- Yes, sir.

(cross-examination)

Q- Mrs. White, how long were you and Carolyn in Alex Department Store on April 18, 1970, before she fell to the floor?

A- We weren't there a bit over a minute, until she hit the floor. It just took a few seconds to get from the door down to the place where she fell.

*Shirley Brock*

A- Carolyn was in front and Pauline behind her and my mother, and then, me, and Pauline kindly got hold of Carolyn's shoulder and said "Straighten up, Carolyn, straighten up, straighten up there, girl." She was walking and shoved her. The third time she shoved her, Carolyn fell.

Q- Where was she in the store when she fell?

A- Beside the cash register and desk.

Q- Who was at the cash register and desk, if anyone?

A- Mr. & Mrs. Gergley was.

Q- Were they standing or seated?

A- I think, Mr. Gergley was standing and Mrs. Gergley was sitting down; I can't remember.

Q- If you can tell, how near to Mr. Gergley, Carolyn and Pauline Robinson were you when Pauline first put her hands on Carolyn's shoulder?

A- We were just like inside the door, about as far as from here to where you are at, I guess, before she shoved her down, maybe, not that far.

Q- To get some idea of the distance in feet, would that be fifteen or twenty feet from the store door to where she fell?

A- I don't know; I'm not a good judge of distance.

Q- Where had you started when Pauline put her hands on Carolyn's shoulders and Carolyn fell?

A- When she put her hands on Carolyn, we were inside the door and started back to look at clothes.

 . . . . . .

Q- What did Mr. Gergley do or say when this happened?

A- He didn't do anything. He kindly laughed a little bit. He didn't do nothing.

In Palmer v. F. W. Woolworth Company, Ky., 451 S.W.2d 850 (1970), it was recognized that in order for the operator of a store to be liable for injuries sustained by a customer (at the hands of other customers) the proof must justify an inference that the danger existed in a sufficient degree and for a sufficient time to put the store personnel on notice and enable them to do something about it. In that case the condition in question was a check-out line which had suddenly become crowded, and it was our opinion that the proof did not reasonably show a situation that had become serious enough to require action by the management in time for such action to be taken. But it is different, we think, when an employe in the spirit of horseplay lays hands upon a customer in the immediate presence of the employer or supervisor. Such an act is an assault and battery. An employer who sees one of his employes committing or about to commit an assault upon a customer is under a duty

to stop it as soon as he can, and this is true regardless of whether the assault is violent or amounts to a mere personal indignity.

We cannot say, of course, whether Gergley, the employer, actually saw what is alleged to have taken place in this instance or whether, if he did, he should have realized that it was an impropriety in time to stop it before the injury occurred. What we do hold, however, is that in the absence of countervailing evidence it would not be unreasonable for a jury to say so.

The judgment is reversed with directions for a new trial.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.