SAMUEL J. SUNSERI, Plaintiff-Appellant, *v.* PATRICK PUCCIA, d/b/a
Imperiales Restaurant and Lounge, *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 79-2208

Opinion filed June 9, 1981.

James K. Lennon, of Stitt, Moore & Lennon, of Rolling Meadows, for appellant.

Michael J. Gibbons, Joseph J. McDonough and Kralovec, Marquard, Doyle, Gibbons & Fraterrigo, Chartered, all of Chicago, for appellee Patrick Puccia.

John L. Martin and James L. Tuohy, both of Tuohy and Martin, Ltd., of Chicago, for appellee Larry Goeske.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff Samuel J. Sunseri brought an action against defendant Patrick Puccia, owner of a restaurant and lounge, and defendant Larry Goeske, his bartender, for injuries received during an altercation on the restaurant premises. On May 7, 1979, in the course of a jury trial, the court directed a verdict for each defendant at the close of plaintiff's case based on an occurrence witness' cross-examination testimony that plaintiff had initiated the fight. Plaintiff asserts on appeal that the verdicts were improperly directed because the trial court misapplied the *Pedrick* standard (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504) and, alternatively, the trial court erroneously allowed defendants to present, over objection, an affirmative defense during plaintiff's case-in-chief. We reverse and remand for a new trial.

Plaintiff testified that after arriving at the restaurant at approximately 10 p.m. on December 14, 1973, Goeske asked to see his identification verifying his legal age to purchase liquor. Plaintiff displayed some identification cards and Goeske walked away. Plaintiff complained to a friend that he was "tired of being carded." Goeske overheard this remark and told plaintiff that if he didn't like it, he should leave. Plaintiff

apologized, but Goeske became increasingly angered. As plaintiff stood up to leave, he waved a universally understood obscene gesture at Goeske. Goeske threatened to "beat the hell" out of him. Plaintiff became frightened because Goeske was considerably taller and heavier, and quickly started towards the exit, but Goeske came from behind the bar and grabbed him. Plaintiff swung at Goeske to defend himself but missed. Goeske then threw plaintiff to the floor and kicked him repeatedly. Goeske allowed plaintiff to stand up, escorted him to the door and once outside, Goeske punched plaintiff in the face. He then threw plaintiff to the ground and jumped on top of him. While holding him there, Goeske began to "gnaw" on plaintiff's ear and he felt Goeske's teeth pierce his ear at least three times. Goeske commented "I hope you see this when I'm done," then stood up and walked away. Patrick Puccia, Richard Sikorski, and several others had been outside watching the entire occurrence, but no one had attempted to stop Goeske. Plaintiff was taken to a hospital where Dr. Allen McClean treated him. About one week later, the doctor amputated the damaged part of his ear.

Dr. Allen McClean testified that when he examined plaintiff in the hospital emergency room, plaintiff's ear was completely severed at the middle and was dangling from a small pedicle at its lowest part. He was quite certain that the wound had been inflicted by human teeth. He sutured the severed portions of the ear together that night but ultimately had to surgically remove the damaged portion after gangrene set in.

Goeske was called by plaintiff as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 60). He testified that after he asked to see plaintiff's identification, the latter reached across the bar and struck him in the face. He escorted plaintiff outside and was again struck by him. He denied biting plaintiff's ear during the fight.

Plaintiff called Palatine police officer Richard Sikorski as his next witness. His motion to invoke section 60 was denied because Sikorski, originally named as a defendant, had been dismissed by plaintiff prior to trial, pursuant to an out-of-court agreement. Sikorski testified that he had been off duty on the night in question and was a customer at the restaurant. He and Puccia observed the fight outside the restaurant, but Puccia refused to help Sikorski when the latter suggested that the fight should be stopped. On cross-examination, Sikorski immediately altered his testimony by stating that Puccia did help him stop the fight. When Sikorski's attention was directed at occurrences inside the restaurant, plaintiff objected that such testimony was outside the scope of the direct examination. The objection was overruled, and Sikorski testified that the fight began when plaintiff reached over the bar and struck Goeske. Sikorski and Goeske escorted plaintiff outside, and Sikorski then re-entered the building. When Goeske didn't return, Sikorski again stepped

outside where he saw the two fighting. He did not witness the beginning of the fight outside.

Terry Zimich, a patron of the restaurant at the time of the altercation, testified for plaintiff: He saw plaintiff being "carded" in the restaurant and heard him complain of this procedure. He heard Goeske tell plaintiff to leave if he disapproved. Plaintiff responded that he did not want any trouble; all he wanted was a beer. Goeske and plaintiff then began to yell at each other. Goeske was behind the bar when he and plaintiff began to yell at each other. Plaintiff had not attempted to punch Goeske, and it was only when Goeske came around the bar that the pushing began. Zimich did not recall precisely what occurred then, but he heard plaintiff say, "leave me alone. One on one if you want." Then the ruction broke up and they went outside the restaurant. He did not go out with them. Another witness, Steve Conklin, testified; however, his recollection of the events was vague and added little substance to the inquiry.

Plaintiff then rested his case. The trial court directed verdicts as to both defendants, relying on Sikorski's testimony that plaintiff initiated the fight inside the restaurant. The trial court did not consider Goeske's testimony to be determinative in directing the verdicts because he was an adverse witness whose testimony was contradicted by plaintiff's. (See, e.g., *Cheek v. Avco Lycoming Division* (1977), 56 Ill. App. 3d 217, 371 N.E.2d 994, and *Spence v. Commonwealth Edison Co.* (1975), 34 Ill. App. 3d 1059, 1069, 340 N.E.2d 550.) The trial court posited, however, that directed verdicts were appropriate because the jury would otherwise be confronted with two versions of how the fight began, one presented by plaintiff and one presented by Sikorski, who was not an adverse witness. We believe that the directed verdicts were improvidently granted for the following reasons.

■■ The oft-quoted standard of *Pedrick* provides that a verdict should be directed only in those cases in which all the evidence, when viewed in its aspect most favorable to the respondent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand (*Pedrick v. Peoria & Eastern R:R.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504). This standard is to be employed in a jury trial whether the motion for a directed verdict is considered at the close of all the evidence, or at the close of plaintiff's case. (*Illinois Bell Telephone Co. v. Purex Corp.* (1980), 90 Ill. App. 3d 690, 697, 413 N.E.2d 106; *Weiner v. Trasatti* (1974), 19 Ill. App. 3d 240, 311 N.E.2d 313.) Substantial factual disputes presented by the evidence require the assessment of witness' credibility or election between conflicting evidence, which fall within the jury's function, and it is then improper to direct a verdict. (*Mareci v. General Motors* (1980), 90 Ill. App. 3d 335, 413 N.E.2d 34.) Sikorski's testimony that plaintiff initiated the fight, even if properly introduced, would not have justified

entry of a directed verdict in Goeske's favor. Viewing the evidence most favorably to plaintiff, it was established that Goeske initiated the fight both inside and outside the restaurant. The jury should have been allowed to resolve the conflict in testimony between plaintiff and Sikorski as to who initiated the fight inside and, thereafter, outside the restaurant. Importantly, plaintiff's version of who initiated the fight outside, where the injury complained of was administered, was not contradicted by Sikorski's testimony. Assuming, *arguendo*, that plaintiff had initiated the fight, Goeske was still not entitled to a directed verdict. Such evidence could have established Goeske's privilege to use self-defense; however, that privilege may have been lost should the jury conclude that the force he employed was excessive under the circumstances. *Lanahan v. Taylor* (1972), 8 Ill. App. 3d 482, 290 N.E.2d 310; *Nicholls v. Colwell* (1903), 113 Ill. App. 219; Restatement (Second) of Torts §71 (1965); Prosser, Torts §119 at 109-10 (4th Ed. 1971).

■■ The trial court's related belief that plaintiff was conclusively "bound" by Sikorski's testimony was also incorrect. The rule that a party may not impeach a witness he has called to testify, for which defendants contend here, is not violated by the introduction of testimony by others disproving the statements of that witness as to the subject facts and circumstances. *Wisniewski v. Shimashus* (1961), 22 Ill. 2d 451, 462, 176 N.E.2d 781; *Highley v. American Exchange National Bank* (1900), 185 Ill. 565, 57 N.E. 436; *Prowell v. Twin Mills Lumber Corp.* (1967), 79 Ill. App. 2d 401, 409, 223 N.E.2d 749; 3A Wigmore, Evidence §907, at 694-97 (Chadbourn rev. 1970).

■■ Plaintiff identifies error in the trial court's permitting cross-examination of Sikorski to extend to matters not covered on direct examination, namely, the events which took place inside the restaurant prior to the fight which ensued outside, claiming manifest prejudice to his case thereby. Defendants assert that the fight inside the restaurant and the fight outside the restaurant were one transaction, and once a witness testifies as to part of a transaction, he may be questioned on cross-examination with respect to the balance thereof. The exercise of discretion in permitting such cross-examination cannot be said to have been abused; however, under these facts, where the witness, although dismissed as a defendant, had been reluctantly called by plaintiff for a limited purpose, discretion might have been better exercised by terminating the examination when it appeared that the traditional purposes of cross-examination were being interfused with defendant's efforts to establish an affirmative defense during plaintiff's case-in-chief. See, *e.g.*, *Telpner v. Hogan* (1974), 17 Ill. App. 3d 152, 158-59, 308 N.E.2d 7; *Horner v. Bell* (1949), 336 Ill. App. 581, 588-89, 84 N.E.2d 672.

■■ Turning to the directed verdict in Puccia's favor, the question raised is

whether the evidence, when viewed most favorably to plaintiff, failed to establish the basis for applying the doctrine of *respondeat superior* or ordinary negligence against Puccia. Under traditional *respondeat superior* analysis, an employer is liable for an employee's torts committed within the scope of that employment. (*Hoover v. University of Chicago Hospitals* (1977), 51 Ill. App. 3d 263, 366 N.E.2d 925.) No precise definition has been accorded the term "scope of employment"; however, the focus is generally upon the issues of whether the employee's act was conducted substantially within the constraints of authorized time and location of the employment (*Torrence v. DeFrates* (1978), 56 Ill. App. 3d 118, 371 N.E.2d 1281; *Awe v. Striker* (1970), 129 Ill. App. 2d 478, 263 N.E.2d 345), and whether the conduct was actuated at least in part by a purpose to further the employer's business. (*Metzler v. Layton* (1939), 373 Ill. 88, 93, 25 N.E.2d 60; *Bonnem v. Harrison* (1958), 17 Ill. App. 2d 292, 298-99, 150 N.E.2d 383; *Cobb v. United States* (N.D. Ill. 1965), 247 F. Supp. 505, *aff'd* (7th Cir. 1966), 367 F.2d 132; Restatement (Second) of Agency §228 (1958).) If an employee commits an intentional tort with the dual purpose of furthering the employer's interest and venting personal anger, *respondeat superior* may lie; however, if the employee acts purely in his own interest, liability under respondeat superior is inappropriate. *Hoover v. University of Chicago Hospitals; Awe v. Striker*; Restatement (Second) of Agency §§235, 245 (1958).

██ An employer is liable for intentional torts of an employee which are not unexpectable in view of the latter's duties. (*Metzler v. Layton.*) The fact that the employee has acted in an outrageous manner or inflicted a punishment out of proportion to the necessities of his employer's business is evidence that the employee departed from the scope of employment, and instead acted for purely personal reasons (Restatement (Second) of Agency §245, comment f (1958)); however, such an act alone is not conclusive because the employee may have been acting with a dual purpose, under which circumstances liability under *respondeat superior* may attach. (*Metzler v. Layton*, 373 Ill. at 92-93; *Cobb v. United States*; *Maddex v. Ricca* (D. Ariz. 1966), 258 F. Supp. 352; Prosser, Torts §70, at 464-65 (4th ed. 1971).) Whether an employee has departed from the scope of employment by acting purely for his own interest, rather than at least in part for the employer, is normally a question for the jury. (See, *e.g.*, *Wallace v. Smith* (1979), 75 Ill. App. 3d 739, 748, 394 N.E.2d 665; *Bonnem v. Harrison.*) Other jurisdictions which have considered a dramshop keeper's *respondeat superior* liability for a bartender's or bouncer's assault on a patron have not precluded liability merely because the force used was unnecessary and excessive since under such circumstances, the use of even excessive force may be anticipated. (See, *e.g.*, *Davis v. DelRosso* (1977), 371 Mass. 768, 359 N.E.2d 313; *Monk v. Veillon* (La.

App. 1975), 312 So. 2d 377; *Maddex v. Ricca*; *Novick v. Gouldsberry* (9th Cir. 1949), 173 F.2d 496; *Chuck's Bar v. Wallace* (1946), 198 Okla. 152, 176 P.2d 484. See also Restatement (Second) of Agency §245, comment i (1958).) The jury here should have been allowed to determine whether Goeske's conduct was within the scope of his employment, based upon the occurrence within the time and location of the employment, the foreseeability of the assault in view of the nature of Puccia's business and Goeske's responsibilities, and Puccia's presence during the commission of the act without intervention.

■■■ Aside from *respondeat superior*, an employer may be liable under ordinary negligence principles for breach of a duty to prevent an employee or others from physically harming their patrons on the employer's premises (*Lessner v. Hurtt* (1977), 55 Ill. App. 3d 195, 197, 371 N.E.2d 125), and the employer knows or should know that control over the employee is necessary and the ability to control exists. (*O'Roark v. Gergley* (Ky. 1973), 497 S.W.2d 931; *Murray v. Dominick* (La. App. 1970), 236 So. 2d 626; *Neallus v. Hutchinson Amusement Co.* (1927), 126 Me. 469, 139 A. 671; Restatement (Second) of Torts §317 (1965). See also *Lipscomb v. Coppage* (1964), 44 Ill. App. 2d 430, 197 N.E.2d 48.) Viewing the evidence most favorably to plaintiff, Puccia's failure to act in any manner to terminate the fight, either by direction to Goeske or in cooperation with Sikorski, establishes a potential basis for negligence liability which the jury should have been allowed to consider.

From the foregoing, we conclude that the directed verdicts were improperly granted as to both defendants. The cause is therefore reversed and remanded for a new trial.

Reversed and remanded.

STAMOS and PERLIN, JJ., concur.