WOODROW TALAS *et al.*, Plaintiffs, v. YOUNGSTOWN SHEET & TUBE COMPANY *et al.*, Defendants (Youngstown Sheet & Tube Company, Third-Party Plaintiff and Appellant, v. Correct Piping Company, Third-Party Defendant-Appellee).

First District (1st Division)   No. 84—1650

Opinion filed June 3, 1985.

Rooks, Pitts & Poust, of Chicago (Terrence E. Kiwala and Geoffrey A. Bryce, of counsel), for appellant.

Cassiday, Schade & Gloor, of Chicago (Joseph A. Camarra and Richard A. Barrett, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant and third-party plaintiff, Youngstown Sheet & Tube Company (Youngstown), appeals from the trial court's order granting

summary judgment in favor of third-party defendant Correct Piping Company (Correct Piping) as to count II of Youngstown's amended third-party complaint, which alleged an implied right of indemnity from Correct Piping. Youngstown also appeals the trial court's denial of its motion for leave to amend its third-party complaint with a count alleging breach of contract. We affirm in part, reverse in part and remand.

This case arose out of an accident which occurred on the night of June 25, 1978, during the course of work being done at Youngstown's steel plant located in Gary, Indiana. Correct Piping, an industrial piping contractor, had been called in by Youngstown, the owner of the steel manufacturing plant, to do some repair and maintenance work on the No. 1 reheat furnace at Youngstown's No. 3 hot strip mill. Another piping contractor, Eichleay Corporation, who is also a defendant in the underlying suit, had begun the repair work on the No. 1 reheat furnace but had been discharged by Youngstown. On June 23, 1978, Youngstown personnel allegedly telephoned Correct Piping regarding the completion of repairs on the furnace. Correct Piping began staffing the project that same day. Youngstown and Correct Piping contracted on a time and material basis in which Correct Piping would invoice Youngstown for time spent and materials utilized for the repair project. A written purchase order invoice for the job was issued by Youngstown on June 28, 1978, three days after the accident and five days after Correct Piping started work on the project. The purchase order referred to the June 23 telephone conversation and stated that Correct Piping was to furnish necessary equipment, tools, supervision and pipefitters to complete the job. Allegedly, Youngstown and Correct Piping previously had done business in this manner.

The accident involving plaintiff Woodrow Talas took place at approximately 11:45 p.m. on June 25, 1978. Talas had been hired as a pipefitter by Correct Piping on June 23, 1978, to work the night shift, while Correct Piping was working around-the-clock on the project. During the 6 p.m. to 12 a.m. shift on Sunday, June 25, Talas was working in the basement underneath the No. 1 reheat furnace at the Youngstown plant. The basement is divided into a number of "bays" or compartments which were about 15 to 25 feet high with large pipes running through them. Talas worked in bay No. 1 with another Correct Piping pipefitter, Gene Klamczynski, from 6 p.m. to approximately 10:30 p.m. and then moved to bay No. 2. There was a scaffold approximately 10 feet off the ground in bay No. 2. This scaffold consisted of three 12-foot long boards laid on top of some large pipes and required a ladder to reach it. Shortly after starting work in bay No. 2,

Talas and Correct Piping superintendent Larry Gregory looked for a 10-foot ladder among Correct Piping's equipment but could only find a new 8-foot ladder, which Talas then took to bay No. 2. Ascending the ladder, Talas had to scramble off the ladder and onto the scaffolding in order to measure some pipes. On his second trip up the ladder, Talas attempted to climb up onto the scaffolding and hit his head on a pipe which had one end disconnected. He fell and sustained serious injuries.

On July 17, 1978, Talas and his wife brought suit against Youngstown and Eichleay Corporation, charging that Youngstown negligently failed to provide: (1) proper and adequate lighting; (2) proper and adequate scaffolding; (3) a safe clean working area; (4) proper supervision of the work; (5) proper coordination of the work of its contractors and subcontractors; (6) safe and proper access to the scaffold upon which he was working; and (7) negligently provided Talas with a scaffold that was dangerous when Youngstown knew or should have known the scaffolding was in a dangerous condition. Youngstown filed its amended answer denying it was negligent and raising several affirmative defenses.

On May 30, 1980, Youngstown filed its original third-party complaint against Correct Piping. Count I alleged breach of contract, count II alleged breach of express indemnity contract, and count III sounded in constructive indemnity. On June 8, 1981, Judge Gomberg dismissed counts I and II with prejudice, but did not find that there was "no just reason for delaying enforcement or appeal." The court also struck count III but gave Youngstown leave to amend. On September 24, 1981, Youngstown filed an amended third-party complaint which consisted of one count alleging a right to indemnity based on the *respondeat superior* doctrine. Youngstown later added another count to its amended third-party complaint which sounded in implied indemnity and is now one of the subjects of this appeal. Correct Piping's motion to dismiss counts I and II of the amended third-party complaint was denied. On December 28, 1982, Correct Piping moved for summary judgment on counts I and II which Judge Gomberg denied with respect to count I on October 13, 1983, but which he granted with respect to count II on December 22, 1983. On June 14, 1984, Youngstown sought leave to amend its amended third-party complaint in order to add a proposed count III alleging breach of contract. Judge Gomberg denied Youngstown's motion for leave to amend in a final and appealable order. Youngstown now appeals that decision as well as Judge Gomberg's decision to grant summary judgment with respect to count II alleging implied indemnity.

■■ We find, and the parties concede, that under the criteria set forth in *Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 262 N.E.2d 593, Indiana law governs the substantive issues raised by Youngstown's third-party complaint. Illinois law governs the procedural aspects of the case since Illinois is the forum State. 46 Ill. 2d 42, 44-45.

Initially, we must decide whether the trial court erred in denying Youngstown's motion for leave to amend its amended third-party complaint with a proposed amended count III which alleged that Correct Piping breached a contractual duty to perform the work in a safe manner. The parties have disputed whether or not the trial court's previous dismissal with prejudice of original count I of the original third-party complaint which made substantially similar claims and allegations bars the proposed amendment. However, we need not and do not decide the issue because we would affirm the trial court's denial of leave to amend even if we were to assume, *arguendo*, that the dismissal with prejudice of original count I did not act as a bar to the addition of proposed amended count III.

■ The decision as to whether to allow or deny an amendment rests within the sound discretion of the trial court (*Montgomery Ward & Co. v. Wetzel* (1981), 98 Ill. App. 3d 243, 423 N.E.2d 1170, *appeal denied* (1981), 85 Ill. 2d 567; *Banks v. United Insurance Co. of America* (1975), 28 Ill. App. 3d 60, 328 N.E.2d 167), and its decision will not be disturbed on review absent an abuse of that discretion (*United Air Lines, Inc. v. Conductron Corp.* (1979), 69 Ill. App. 3d 847, 387 N.E.2d 1272, *appeal denied* (1979), 79 Ill. 2d 618). Among the factors to be considered in deciding that discretion was properly exercised is whether the proposed amendment would cure the defective pleading; whether it could cause prejudice or surprise to other parties; the timeliness of the proposed amendment; and whether previous opportunities to amend the pleadings could be identified. *Kupianen v. Graham* (1982), 107 Ill. App. 3d 373, 377, 437 N.E.2d 774.

■ In the case at bar, the proposed amendment did not cure any defects in the pleading. Youngstown would not be prejudiced by the denial of leave to amend since it has not argued that the issues raised by the proposed amendment could not have been presented and argued before the trial court during its consideration of the dismissed count. However, Correct Piping would be prejudiced by having to relitigate issues which had been previously adjudicated by the trial court in its dismissal with prejudice of a count which made substantially the same allegations and claims as the proposed amendment. Moreover, the proposed amendment was submitted more than three years after the initial filing of the third-party complaint and during that time

many opportunities to amend had presented themselves. Under these circumstances, we cannot say that the trial court abused its discretion in denying Youngstown's motion for leave to amend its amended third-party complaint.

■ Youngstown also contends that the trial court erred in granting Correct Piping's motion for summary judgment as to count II of the amended third-party complaint. We agree.

In reviewing the trial court's grant of summary judgment, we must consider all grounds and facts urged below to determine whether a genuine issue of material fact exists and whether the moving party was entitled to summary judgment as a matter of law. (*Newell v. Field Enterprises, Inc.* (1980), 91 Ill. App. 3d 735, 415 N.E.2d 434; *Cato v. Thompson* (1980), 83 Ill. App. 3d 321, 403 N.E.2d 1239.) In doing so, we must construe the evidence and pleadings strictly against the moving party and liberally in favor of the opponent. *Baier v. State Farm Insurance Co.* (1975), 28 Ill. App. 3d 917, 329 N.E.2d 543, *aff'd* (1977), 66 Ill. 2d 119.

Indiana follows the general rule prohibiting contribution or indemnity between joint tortfeasors. (*McClish v. Niagara Machine & Tool Works* (S.D. Ind. 1967), 266 F. Supp. 987 (applying Indiana law).) There are, however, well-recognized exceptions to this general rule, in which the right to indemnity is implied. One such exception arises when a person is found constructively liable as a result of a non-delegable duty imposed by operation of a special statute or rule of law. When such a person is otherwise without fault, he is entitled to indemnity from one who directly causes the harm. *McClish v. Niagara Machine & Tool Works* (S.D. Ind. 1967), 266 F. Supp. 987, 989-90; see also *Krone v. United States Steel Corp.* (1978), 60 Ill. App. 3d 613, 615, 377 N.E.2d 222, *appeal denied* (1978), 71 Ill. 2d 609.

Youngstown asserts that this exception is applicable here. Correct Piping maintains that the Talas action could only result in Youngstown's being found either not liable at all or liable as a joint tortfeasor. Either finding would preclude an indemnity action. Correct Piping argues that there is no allegation in the Talas' complaint as to any means by which Youngstown could be held merely constructively liable to Talas and his wife. However, we believe that a finding of constructive liability is possible in the case at bar.

Under Indiana law, an owner of land has a nondelegable duty to keep its premises in a reasonably safe condition. (See *Hale v. Peabody Coal Co.* (1976), 168 Ind. App. 336, 343 N.E.2d 316; *Broadhurst v. Davis* (1970), 146 Ind. App. 329, 255 N.E.2d 544; *Hoosier Cardinal Corp. v. Brizius* (1964), 136 Ind. App. 363, 199 N.E.2d 481.) The duty

is nondelegable in the sense that a contract for the performance of that duty by another will not necessarily relieve the owner of liability in the event of nonperformance. (See *Broadhurst v. Davis* (1970), 146 Ind. App. 329, 255 N.E.2d 544; 62 Am. Jur. 2d *Premises Liability* sec. 15 (1972).) Courts interpreting Indiana law have recognized that an owner of land may be held liable solely on the basis of its nondelegable duty, yet be otherwise without fault. (*J.C. Penney Co. v. Westinghouse Electric Corp.* (7th Cir. 1965), 351 F.2d 561, 563-64) (applying Indiana law).) In such cases, an indemnity action under the constructive-liability exception will lie against the one who caused the harm even though the complaint in the underlying action alleges acts of negligence on the part of the owner which, if proved, would bar indemnity. *Schrier v. Indiana Harbor Belt R.R. Co.* (1980), 82 Ill. App. 3d 561, 567-68, 402 N.E.2d 872; *J.C. Penney Co. v. Westinghouse Electric Corp.* (7th Cir. 1965), 351 F.2d 561, 563-64. See also *Mech v. Pullman Standard* (1984), 136 Ill. App. 3d 939 (petition for rehearing pending).

From the foregoing, it is clear that Youngstown would be entitled to indemnity from Correct Piping if the Talas' action resulted in a finding that Youngstown was negligent solely on the basis of its nondelegable duty to keep its premises in a reasonably safe condition, but that it was otherwise without fault because the dangerous condition was caused by Correct Piping. Of course, if Youngstown knew or should have known of the dangerous conditions or committed any other concurrent acts of negligence, the general rule prohibiting indemnity would apply. However, the allegations in the Talas' complaint of specific acts of negligence by Youngstown do not automatically entitle Correct Piping to summary judgment on Youngstown's action for indemnity, particularly since there were issues of fact concerning those allegations.

Here, Youngstown placed in issue whether the allegations of the complaint asserting negligent conduct on Youngstown's part were referable to conditions of the workplace falling within the responsibility of Correct Piping under an alleged contractual duty to perform the work in a safe manner. Youngstown denied all allegations of negligence on its part and asserted that Correct Piping had assumed responsibility for the safety of the work area under an oral contract entered into on the day Correct Piping started work on the project. Youngstown's purchase order invoice, which was issued after the accident, stated that Correct Piping was to furnish the equipment and supervision which the Talas complaint later alleged Youngstown negligently failed to provide. It is undisputed that Correct Piping rather

than Youngstown supplied Talas with additional safety equipment, such as a ladder and a temporary light. However, the 8-foot ladder supplied by Correct Piping did not reach the 10-foot high scaffolding in bay No. 2, and the temporary light was used in bay No. 1, but not in bay No. 2. These facts and pleadings, when viewed in a light most favorable to Youngstown, raised triable issues of fact as to who was responsible for the safety of the work area and whose negligence caused the accident.

Furthermore, the question as to whether Correct Piping was a servant or an independent contractor and the extent to which Youngstown supervised or controlled the work being performed by Correct Piping was an issue of material fact. See *Prest-O-Lite Co. v. Skeel* (1914), 182 Ind. 593, 597, 106 N.E. 365, 367; 41 Am. Jur. 2d *Independent Contractors* sec. 29 (1968).

In addition, a triable issue of fact exists regarding whether Youngstown knew or should have known of the allegedly dangerous conditions in bay No. 2. Correct Piping failed to show that Youngstown officials inspected bay No. 2 or were present while Talas worked there. Correct Piping also did not establish how long the scaffolding had been in bay No. 2 or who erected it. Although Talas stated that he complained to a Youngstown "job coordinator" about conditions in bay No. 1, Youngstown officials who were responsible for the repair project denied receiving such complaints. Talas and his co-worker testified that the permanent light fixtures mounted on the walls of the bays were inadequate. However, their testimony was contradicted by Dana Frost, a Youngstown foreman, who stated that additional lighting was not needed. Consequently, we cannot say as a matter of law that Youngstown had actual knowledge of the conditions in bay No. 2 or that those conditions existed for a sufficiently long period of time that Youngstown should have discovered them.

■ In conclusion, Youngstown's indemnity claim depends on whether Youngstown is found negligent in the Talas action and, if so, the extent to which it is found negligent. The unproved allegations in the Talas' complaint do not preclude as a matter of law a finding of constructive liability, particularly since there were factual disputes concerning those allegations and the extent to which Youngstown was negligent. Since Correct Piping's right to summary judgment was not free from doubt on the basis of this record, it was error to grant summary judgment. However, we do not express any opinion as to the merits of the factual controversies. We hold only that triable issues of material fact were presented by the pleadings and depositions in this case.

Accordingly, we affirm the trial court's denial of leave to amend, but we reverse the court's summary judgment order and remand the cause for further proceedings consistent with the views expressed herein.

Affirmed in part, reversed in part and remanded.

CAMPBELL and BUCKLEY, JJ., concur.