EARNEST HARRINGTON, Plaintiff-Appellant, v. CHICAGO SUN-TIMES *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 85—736

Opinion filed December 10, 1986.

Charles A. Boyle & Associates, of Chicago (William J. Harte, Ltd., of counsel), for appellant.

William V. Johnson and Cornelius J. Harrington III, both of Johnson, Cusack & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Earnest Harrington, brought a tort action against defendant Earl J. Scarpelli and Scarpelli's employer, defendant Chicago Sun-Times, a division of Field Enterprises, Inc. The trial court held that Scarpelli's tortious conduct was not within the scope of his employment and granted the Sun-Times' motion for summary judgment. Plaintiff contends on appeal that the trial court erred in granting summary judgment because genuine issues of material fact remain and that the trial court abused its discretion in denying plaintiff's motion to amend his complaint following the entry of summary judgment.

The depositions and other materials supporting and opposing the entry of summary judgment revealed the following relevant facts. Scarpelli is a route driver who delivers newspapers, and has been working for the Sun-Times since 1964. In November 1979, Scarpelli began driving on route 709, which he considered to be a dangerous area in Chicago. Scarpelli carried a handgun while working. Scarpelli stated that, unknown to his supervisors, "[q]uite a few" drivers carried guns. In June 1980, Angelo Passialis, Scarpelli's supervisor, issued a notice to all drivers threatening immediate discharge of any employee who violated the company policy against carrying guns.

Scarpelli stated that prior to February 21, 1981, he had problems with newspapers being stolen, usually on the weekends, from the vicinity of 1926 West Congress Parkway. Scarpelli described the persons he suspected of stealing the newspapers as men or young-

sters between the ages of 16 and 18. Scarpelli was paid a straight salary and did not lose money for the newspapers that were stolen. On August 13, 1980, the Sun-Times wrote informing Scarpelli that his account was short by $3,494.86. Scarpelli paid this account immediately. The Sun-Times warned Scarpelli that any further shortages would result in his dismissal.

On February 21, 1981, Scarpelli and a helper, Bernard Woods, began delivering newspapers on route 709. At approximately 4:55 a.m., they delivered papers to a store at 1926 West Congress Parkway. Scarpelli stated that he was in a parking lot and saw plaintiff looking under the hood of a car. Plaintiff was approximately 41 years old. Scarpelli stated further that plaintiff was "[t]rying to steal a car." Scarpelli emerged from his truck and warned plaintiff to stop or he would shoot. Plaintiff began running away, passed the truck, and a pocketknife dropped from his hand. When plaintiff had run about 10 feet past him, Scarpelli drew his gun and shot plaintiff once in the back. Scarpelli entered the truck, drove over to plaintiff, and threatened to run him over. Scarpelli then left the scene. Scarpelli had never seen plaintiff before, and there was no one else in the parking lot. Scarpelli was asked: "You didn't suspect him of stealing any newspapers, did you?" Scarpelli replied, "No, I tell you, I just had dropped them off." Scarpelli was arrested the next day and subsequently found guilty of aggravated battery and sentenced to a conditional 30-month probationary term. He was also suspended by the Sun-Times for one week.

In a transcribed statement made by Woods to an investigator on March 27, 1981, Woods stated that "most" of the Sun-Times route drivers carried guns. Woods first stated that Anthony Pacelli, a Sun-Times division head, did not know the drivers carried guns, but then said that Pacelli was aware that over 200 drivers carried guns. Woods said that the drivers carried guns for their own protection and to keep people from robbing the money they had collected. Scarpelli never told Woods why he shot plaintiff. Woods stated that Scarpelli later returned to the scene to get the gun.

On December 30, 1981, plaintiff filed this action. Count I sought to recover against the Sun-Times as Scarpelli's employer. The complaint alleged that the Sun-Times had actual knowledge that drivers, including Scarpelli, were carrying revolvers for use in the course of their employment; that the Sun-Times negligently failed to supervise Scarpelli's acts; and that the Sun-Times negligently allowed and encouraged employees, including Scarpelli, to carry firearms for use in the defense of Sun-Times property. Counts II and III were ad-

dressed against Scarpelli individually and are not at issue in this appeal.

On June 29, 1984, the trial court granted the Sun-Times' motion for summary judgment. On July 27, 1984, plaintiff filed a motion for reconsideration and to vacate the summary judgment. On February 15, 1985, plaintiff asked for leave to amend his complaint to include a count of negligent hiring and a count of negligent retention. On February 21, 1985, upon denying plaintiff's motion to reconsider and to vacate, the court found that on the facts provided it was clear that Scarpelli's conduct was outside the scope of his employment.

The court also denied plaintiff's motion to amend the complaint, stating that plaintiff had received every fair opportunity to establish an action. The court believed that adding new causes of action which were available as a matter of choice four years earlier would create numerous problems. These problems included discovery tactical problems; availability of witnesses; impact on earlier decisions regarding settlement; and other factors which might further delay bringing the matter to trial. The court concluded that allowing the amendment would be an abuse of its discretion.

Plaintiff contends that the entry of summary judgment was improper because genuine issues of material fact remain as to whether Scarpelli was acting within the scope of his employment when he shot plaintiff; whether Scarpelli was obligated to reimburse the Sun-Times for newspapers stolen from his route; and whether the Sun-Times had knowledge of its drivers' possession and use of firearms.

■ The purpose of summary judgment is not to try facts, but to determine whether a genuine issue of any material facts exists, thus requiring a jury trial. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005; *Golden v. Marshall Field & Co.* (1985), 134 Ill. App. 3d 100, 479 N.E.2d 1211.) Even though a complaint may purport to raise an issue of material fact, if such issue is not further supported by evidentiary facts, summary judgment is appropriate. (134 Ill. App. 3d 100, 479 N.E.2d 1211.) Where the pleadings, depositions, or affidavits on file show that no genuine issue as to any material fact remains, and movant is entitled to judgment as a matter of law, it is the duty of the trial court to enter summary judgment. (*Gordon v. Oak Park School District No. 97* (1974), 24 Ill. App. 3d 131, 320 N.E.2d 389.) Where there are no facts in dispute, the court may draw inferences therefrom, and if no fair-minded person could draw different inferences from the facts, then there is no triable issue of fact and the motion for summary judgment should be granted. (*Roth v. Carlyle Real Estate Limited Partnership VII* (1984), 129 Ill. App.

3d 433, 472 N.E.2d 836.) In determining whether a moving party is entitled to summary judgment, the court must construe the materials supporting the motion strictly against the movant and liberally in favor of the opponent. *Zanzig v. H.P.M. Corp.* (1985), 134 Ill. App. 3d 617, 480 N.E.2d 1204.

■■ ■ An employer cannot be held responsible for the criminal act of its employee when the act is committed for the benefit of the employee and is not in furtherance of the employer's business. (*Hoover v. University of Chicago Hospitals* (1977), 51 Ill. App. 3d 263, 366 N.E.2d 925.) One factor in determining whether an assault committed by the employee is within the scope of his employment is whether the employee has completed the business dealings of the employer. *Awe v. Striker* (1970), 129 Ill. App. 2d 478, 263 N.E.2d 345.

Scarpelli testified that he had completed his delivery of the newspapers when he saw plaintiff "stealing a car" and shot him. Scarpelli denied that he believed plaintiff was a newspaper thief, emphasizing that the newspapers had already been delivered. Scarpelli described the suspected thieves as being 16 to 18 years old, while he described plaintiff as being approximately 41 years old.

■ Plaintiff relies on Woods' deposition to establish a genuine issue of material fact as to why Scarpelli shot plaintiff. Woods stated, however, that Scarpelli never told him why he shot plaintiff. Plaintiff maintains, without a cite to the record, that Woods testified Scarpelli "indicated" that he thought he "got the guy that's been stealing our papers." The relevant portion of Woods' deposition testimony reads:

"Q. Did he [Scarpelli] ever mention the fact that somebody was stealing papers, newspapers there?

A. Yes.

Q. Tell me about that? Was this after the shooting he explained this to you?

A. Yeah. Right after the shooting.

Q. What did he say to you?

A. He said somebody was stealing the papers from here all the time."

There is no other testimony from Woods on this subject. The quoted passage does not create a disputed fact because Woods does not say that Scarpelli told him plaintiff was the newspaper thief. The court would have to infer from Woods' testimony that Scarpelli's statement regarding stolen newspapers was directly tied to his shooting plaintiff, although nothing in the record shows such a connection.

Fair-minded persons could not draw an inference from Woods' statements that Scarpelli believed plaintiff was the person stealing newspapers, especially in light of Woods' testimony that Scarpelli never explained why he shot plaintiff.

Additionally, the shooting would not fall within the scope of employment even if Scarpelli had believed plaintiff was a newspaper thief. Such conduct was too far removed from any reasonably foreseeable conduct of an employee. (See *Sunseri v. Puccia* (1981), 97 Ill. App. 3d 488, 422 N.E.2d 925, citing Restatement (Second) of Agency sec. 245, comment f (1958).) Here, Scarpelli acted in an outrageous manner and inflicted punishment out of proportion to the necessities of his employer's business. Thus, he departed from the scope of his employment and acted for purely personal reasons.

Plaintiff maintains that two additional factual disputes preclude summary judgment. Plaintiff concedes in his brief, however, that the issue of why Scarpelli shot plaintiff is dispositive of whether Scarpelli was acting within the scope of his employment. If "Scarpelli shot a man who [he believed] was attempting to steal a car, then he was engaged in a frolic of his own, not protecting the property of the Sun-Times, which would therefore not be liable for the results of Scarpelli's conduct." In view of our finding that plaintiff failed to establish a connection between the stolen newspapers and the shooting of plaintiff, we find the two additional factual issues are not genuine issues of material fact. However, even if this were not dispositive, the remaining issues raised by plaintiff do not preclude summary judgment.

Plaintiff argues there is a genuine issue of material fact as to whether, "in addition to protecting the property of his employer, Scarpelli was furthering his own interests as he was personally responsible for any papers stolen from him." Scarpelli testified that he receives a straight salary and does not lose money for stolen newspapers. Plaintiff relies on the August 13, 1980, letter from the Sun-Times to Scarpelli to establish the contrary. That letter, however, merely states that Scarpelli's account was short by $3,494.86. It says nothing to indicate that the amount was due as a result of stolen newspapers on Scarpelli's route. It would be unreasonable to infer that $3,494.86 worth of newspapers were stolen from Scarpelli's route. Plaintiff points to the following testimony by Woods:

> "Q. Does he [Scarpelli] lose money because of that [stealing newspapers]?
> A. Yes. He had to pay it back out of their pocket.

Q. In other words, he goes and he collects money from the newsstand vendors or what have you?

A. Stores.

Q. If he comes up short because he doesn't have enough return papers, he loses money?

A. Yeah."

Both the questions and answers in this passage are unclear. It is not clear whether Woods is testifying that the money paid out of "their pocket" means Scarpelli collects money from the "stores" for stolen newspapers. We do not believe this testimony sufficiently establishes a factual dispute in light of the other evidence presented on this issue. Moreover, even if Scarpelli was required to reimburse his employer for stolen newspapers, his gunning down the thief would benefit his own financial interests, not the Sun-Times' interests. See *Sunseri v. Puccia* (1981), 97 Ill. App. 3d 488, 422 N.E.2d 925.

■ Plaintiff also relies on a statement made by the judge at the sentencing hearing after Scarpelli was convicted of aggravated battery. The judge's statement does not comply with Supreme Court Rule 191(a), which requires affidavits or comparable material supporting or opposing a motion for summary judgment be made based on personal knowledge. (*Klobucar v. Stancik* (1985), 138 Ill. App. 3d 342, 485 N.E.2d 1334.) Thus, it is incompetent evidence and cannot be relied upon to oppose the motion for summary judgment.

Plaintiff also contends that a genuine issue of material fact exists as to whether the Sun-Times knew that its drivers carried guns. Plaintiff relies on Woods' testimony that two supervisors knew that most of the drivers carried guns, Scarpelli's testimony that a substantial number of drivers had been carrying guns for many years, and the Sun-Times' memorandum stating it was against company policy for drivers to carry guns. Plaintiff reasons that the Sun-Times should have foreseen that one of its gun-carrying employees might injure someone. Viewing these facts in a light most favorable to plaintiff, even if the Sun-Times had knowledge that its drivers carried guns, it expressly prohibited them from doing so. We agree with the trial court that the Sun-Times toleration of such a practice was not established and, even if it had been, toleration does not create agency under the facts presented here.

■ The trial court was correct in ruling that Scarpelli was not acting within the scope of his employment when he shot plaintiff. Consequently, the Sun-Times cannot be held responsible for Scarpelli's conduct and the entry of summary judgment for the Sun-Times was proper.

▪️ Plaintiff next contends that the trial court erred in denying his request to amend the complaint to include counts alleging negligent hiring and negligent retention of an employee. The trial court has the discretion to allow leave to amend a complaint, and its decision will not be disturbed on review absent an abuse of that discretion. (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(a); *Talas v. Youngstown Sheet & Tube Co.* (1985), 134 Ill. App. 3d 103, 479 N.E.2d 1052.) In deciding whether to allow leave to amend a complaint, the trial court may consider timeliness of the proposed amendment. 134 Ill. App. 3d 103, 479 N.E.2d 1052.

▪️ In *Skolnick v. Nudelman* (1966), 71 Ill. App. 2d 424, 218 N.E.2d 775, this court held that the trial court properly denied leave to amend the complaint where the request was filed five months after entry of summary judgment. Similarly, in the present case the trial court properly denied leave to amend the complaint where plaintiff filed the request over seven months after entry of summary judgment for the Sun-Times, four years after the shooting, and over three years after originally filing the action. The request was filed six days prior to a scheduled hearing to reconsider the entry of summary judgment and was not included in the motion for reconsideration filed six months earlier. Moreover, the counts plaintiff wishes to add involve facts to which plaintiff had access when the original complaint was filed. (See *Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 392 N.E.2d 591.) The trial court did not abuse its discretion in denying plaintiff's motion to file an amended complaint.

For the foregoing reasons, the judgment of the circuit court of Cook County granting summary judgment in favor of defendant Sun-Times and denying plaintiff's request to file an amended complaint is affirmed.

Judgment affirmed.

RIZZI, P.J., and WHITE, J., concur.