2022 IL App (2d) 210299-U
No. 2-21-0299
Order filed March 25, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CHICAGO TITLE AND LAND TRUST, COMPANY, as Trustee for Land Trust Agreement No. 8002353688, 3006 Fox Glen Ct., St. Charles, Illinois, NICHOLAS FITZ, P.C., and NICHOLAS FITZ, individually, | ) ) ) ) ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 20-CH-359 |
| UNITED STRUCTURAL SYSTEMS OF ILLINOIS, INC., RICK THOMAS, and ROBERT VANN, | ) ) ) ) ) | |
| Defendants | ) ) | Honorable Kevin T. Busch, |
| (Robert Vann, Defendant-Appellee). | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Trial court did not err in dismissing with prejudice plaintiff's complaint against an individual defendant.  Affirmed.

¶ 2    Plaintiff, Nicholas Fitz, is the beneficiary of a land trust.  He began an expansion project on the land trust's property, located at 3006 Fox Glen Court in St. Charles, with the intent that his

law firm would use the improved area to entertain clients and generate business. Ultimately, a dispute arose between Fitz and one of the construction contractors, interfering with the permitting process. As such, Fitz, his law firm (Nicholas Fitz, P.C.), and Chicago Title and Land Trust Company (as trustee for Land Trust Agreement Number 8002353688, 3006 Fox Glen Court., St. Charles, Illinois) (collectively, "plaintiffs") sued contractor United Structural Systems of Illinois, Inc. (USS), Rick Thomas (USS's owner), and Robert Vann (St. Charles's inspector) (collectively "defendants"). Vann moved to dismiss plaintiffs' complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)). The trial court granted Vann's motion with prejudice and denied plaintiffs' request for an opportunity to amend the complaint. Plaintiffs appeal. We affirm.

¶ 3                                            I. BACKGROUND

¶ 4                                    A. Complaint against Vann

¶ 5    On November 10, 2020, plaintiffs filed their complaint. In relevant part, the complaint's introductory paragraphs identified the parties, describing Vann as "an individual being sued in his individual capacity and who at all relevant times in this complaint, was the Village of St. Charles City Inspector but is now retired."

¶ 6    Plaintiffs alleged that the property at issue is a 5,000-square-foot residence with a large outdoor area. The outdoor area was to be expanded to include a large, self-supported balcony, a veranda with outdoor kitchen, a pool, and a seating area for seasonal entertainment. Ultimately, plaintiffs desired to entertain clients and generate business. The outdoor area expansion required support by "heli coils" encased in concrete and rebar under the rear balcony. To that end, plaintiffs alleged, they accepted USS's proposal of $17,310 to install 10 helical piers and steel bolt caps to support the balcony foundation pillars. The parties entered into a written contract, which was

attached to the complaint. USS required an initial payment of $7,000 for materials, before work was performed, and plaintiffs paid that amount.

¶ 7    Plaintiffs further alleged that the City of St. Charles[1] required that certain testing be performed on the helical coils after their installation and that USS and Thomas agreed to perform that work in accordance with the structural engineering plans that Vann had approved. Further, plaintiffs alleged, the City required that USS submit compression logs prior to additional permits being issued for work on the helical coil foundation by subsequent contractors.

¶ 8    Plaintiffs alleged that, "upon information and belief compression testing was performed by USS for the helical coils and compression logs were created and given to Robert Vann." However, the compression logs were not given to plaintiffs, nor did USS tender any "official" compression logs to the City. Plaintiffs alleged that they asked the City for the logs, but the City represented none were received.

¶ 9    According to the complaint, the property was damaged and there were disputes about correcting the damage. USS then demanded that plaintiffs pay $8,500 before it would release the compression logs.

¶ 10   Around November 2017, plaintiffs alleged, Kevin Ciccone (relationship to plaintiffs not specified in the complaint, although the record reflects that he is the president of plaintiffs' general contractor) asked Thomas about USS's submission of the compression logs to the City. Thomas stated that "Bob Vann is a friend of mine" and that he had "Vann on speed dial." Further, "Ciccone conversed with Robert Vann, then Inspector for the [City] of St. Charles. Robert Vann said that

_____

[1] The complaint actually repeatedly referred to St. Charles as a village, but it is a city and we refer to it as such. See, *e.g.*, http://www.stcharlesil.gov.

no compression logs would be provided until Rick Thomas and USS were paid. Robert Vann's conduct was intentional and willful and outside the scope of his employment."

¶ 11 Plaintiffs alleged that, as a result of "USS's actions and conduct," the City "pulled" the permit, as Thomas said would happen, and no further action may be taken with respect to the outdoor area and foundation. They alleged that the real property lost value, along with the intended use of the outdoor area, and that plaintiffs have been denied use of their outdoor area. Further, the purchased materials have aged beyond use and defendants' "malfeasance and incompetence caused a pestilence that resulted in damages in excess of $75,000."

¶ 12 The complaint alleged seven counts, six of them against Vann. Specifically, in count II, "waste" (also alleged against USS and Thomas), plaintiffs alleged that their property and outdoor area required protection, and defendants' malfeasance, incompetence, and affirmative actions resulted in waste, disuse of the property, and interruption of other work. Further, Vann and Thomas "acted together to prevent the release of the compression logs along with the revocation or pulling of the permit so as to impede progress and completion of the work." Plaintiffs sought damages, costs, and interest.

¶ 13 In count III, "intentional interference with prospective advantage" (also alleged against Thomas), plaintiffs alleged that they had a valid business expectancy to use the outdoor area to entertain prospective clients, yet Vann and Thomas intentionally acted to (1) halt renovations; (2) prevent the property owners from obtaining other permits; and (3) thwart plaintiffs' ability to entertain clients and generate business. They alleged that defendants' actions were arbitrary, capricious, and willful, and purposefully interfered with plaintiffs' prospective advantage and business expectancies. Plaintiffs sought compensatory and punitive damages and costs in excess of $75,000.

¶ 14    In count IV, "fraudulent concealment" (also alleged against Thomas), plaintiffs alleged that, while they had believed that they were simply involved in a contractual dispute, it was concealed that, by withholding and concealing the compression logs, Thomas and Vann were acting in concert to prohibit the progression and completion of the construction.  Specifically, plaintiffs alleged, prior to Ciccone's November 2017 conversations with Thomas and Vann, plaintiffs justifiably believed that they were in a contractual dispute with USS and Thomas.  However, "[h]ad [they] known prior to November of 2017 of Messrs. Thomas and Vann's covert conduct they would have taken a course of action with the [City] of St. Charles to rectify the situation."  Plaintiffs sought compensatory and punitive damages and costs in excess of $75,000.

¶ 15    In count V, "consumer fraud: deceptive trade practice" (also alleged against Thomas), plaintiffs alleged that it was unfair and deceptive for defendants to act together and in concert to withhold the compression logs as leverage so that USS and Thomas would get paid.  Plaintiffs alleged that it was concealed from them that defendants were acting in concert to prohibit the progression and completion of the additions by withholding and concealing the compression logs. They also alleged that the conduct was immoral, unethical, oppressive, and unscrupulous, and, further, that "Vann's conduct offends public policy for Mr. Vann acted outside of the scope of his public employment and placed the self-interest of his friend ahead of his responsibilities [to] the citizens."  Plaintiffs sought compensatory and punitive damages and costs in excess of $75,000.

¶ 16    In count VI, "civil conspiracy" (also alleged against Thomas), plaintiffs alleged that defendants acted in concert, knowingly and willingly, to deprive plaintiffs of the use, expected use, and enjoyment of the property.  The conspiracy included acts to (1) deprive plaintiffs by pulling and/or revoking the construction permit; (2) deprive plaintiffs of the compression logs; (3) deprive plaintiffs of the ability to continue and complete construction; (4) "engage in an intensified

program of harassment"; and (5) "cause the plaintiffs misery." Plaintiffs alleged that, on account of defendants' malicious conduct, they were entitled to compensatory and punitive damages and costs in excess of $75,000.

¶ 17    Finally, in count VII, "injunctive relief" (also alleged against Thomas), plaintiffs alleged that it is "evident from the admissions of Robert Vann to Mr. Ciccone that either Mr. Vann or Mr. Thomas are in possession of the compression logs." Plaintiffs alleged that defendants' collective or singular possession of the compression logs is unlawful, the logs are needed to complete construction, and plaintiffs have the right to "return" of the compression logs. Plaintiffs alleged that they had no adequate remedy at law to secure the return of the compression logs and that defendants' possession of the logs will cause irreparable harm. Plaintiffs requested a temporary restraining order or preliminary injunction ordering defendants to return the logs pending resolution of the case on the merits or, alternatively, ordering them to return the logs to plaintiffs to prevent further waste on the property.

¶ 18                                B. Motion to Dismiss

¶ 19    Vann filed a section 2-619.1 motion to dismiss the complaint and attached an affidavit, sections of the City's code, and certain business records, including emails between Vann and Ciccone. In sum, Vann argued that the complaint allegations all concerned his performance as the City's Building and Code Enforcement Division Manager, and, further, that plaintiffs failed to state claims upon which relief could be granted. Moreover, to the extent that plaintiffs' claims constituted civil actions, Vann argued that they were barred by the one-year statute of limitations provided by the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/8-101(a) (West 2020)). Alternatively, Vann argued that, to the extent that plaintiffs' claims against him arose from the issuance or revocation of a building permit, or

from some negligent misrepresentation, sections 2-206 and 2-210 of the Tort Immunity Act afforded him immunity (*id.* §§ 2-206, 2-210). Specifically, Vann moved to dismiss counts II, III, IV, and VI against him pursuant to both sections 2-615 and 2-619 of the Code.

¶ 20                                C. Hearing and Court's Ruling

¶ 21    On May 6, 2021, the court held a hearing on Vann's motion. As a preliminary matter, the court allowed plaintiffs to voluntarily non suit count V (consumer fraud/deceptive trade practice) against Vann.

¶ 22    Next, after hearing argument, the court found that the complaint was based almost entirely on alleged fraud. However, the court found, none of the pleaded allegations satisfied the level of specificity needed to establish claims such as fraudulent concealment or civil conspiracy. Moreover, as to count II, "[t]he waste claim. It is impossible for plaintiff[s] to establish a waste claim against [Vann] because [Vann] wasn't in a position to control the property. His position as a City inspector issuing permits or denying permits could not, as a matter of law, [have] resulted in waste to the property." Regarding count III (intentional interference with prospective advantage), the court found the claim lacked allegations that could substantiate such a claim, as plaintiffs did not plead that Vann knew what the prospective advantage was and with whom. As for counts IV and VI (fraudulent concealment and civil conspiracy, respectively), the court found both lacking any specific allegations of fraud.

¶ 23    The court dismissed with prejudice all counts for failing to state a claim and, further, as outside the statute of limitations. It noted, "when a party knowingly pleads an action that is obviously outside the statute of limitations, that party must specifically plead why they're exempt from the statute of limitations. [Plaintiffs] have not. [Plaintiffs] haven't even gotten close to

pleading any allegations that rise to the level of alleging fraudulent concealment or civil conspiracy."

¶ 24    As the court had dismissed counts IV and VI based on the statute of limitations, but *also* for lacking specific allegations of fact, plaintiffs' counsel requested, at the end of the hearing, the opportunity to amend the complaint with regards to the "defraud counts." The court responded, "I dismissed it with prejudice." The written order reflects that the court dismissed counts II, III, IV and VI for failing to allege facts sufficient to state a claim and also pursuant to section 2-619(a)(5) for failing to timely file within the one-year statute of limitations. Plaintiffs appeal.

¶ 25                                    II. ANALYSIS

¶ 26                        A. Jurisdiction and Standard of Review

¶ 27    Preliminarily, although not raised by the parties, we briefly comment on our jurisdiction. See, *e.g.*, *Fligelman v. City of Chicago*, 264 Ill. App. 3d 1035, 1037 (1994) (appellate court has an independent obligation to verify jurisdiction). We note that Vann moved to dismiss all counts against him except count VII, which concerned injunctive relief. The record does not reflect that the count was nonsuited (like count V), nor was count VII addressed by either party in the motion to dismiss briefing, at hearing on the motion, or the court's dismissal order. Nor do the parties mention count VII in the briefing before this court. The May 6, 2021, dismissal order dismisses counts II-IV and VI, then sets a date for a hearing on claims against only USS and Thomas. Thus, it is not clear whether count VII remains pending against Vann and, if it does, then contrary to plaintiffs' jurisdictional statement (left uncorrected by defendant), our jurisdiction is not proper under Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017), as the order was not a final one disposing of all claims. Nevertheless, dismissal of this appeal is unnecessary because Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) provides that we *do* have

jurisdiction over judgments that dispose of fewer than all claims against fewer than all parties if the order expressly reflects that there is no just reason for delaying either enforcement or appeal. The written order here just barely meets Rule 304(a)'s standards, as it states that the judgment is "final and immediately appealable." *Cf.*, *Palmolive Tower Condominiums, LLC v. Simon*, 409 Ill. App. 3d 539, 544 (2011) (noting that circuit court's finding that an order was "final and appealable," without reference to an *immediate* appeal or the justness of delay, is insufficient to trigger Rule 304(a)). Thus, our jurisdiction is proper.

¶ 28 Next, we define our standard of review. Vann's motion was filed pursuant to section 2-619.1 of the Code and included arguments for dismissal under both sections 2-615 and 2-619 of the Code. See, *e.g.*, *Downey v. Wood Dale Park District*, 286 Ill. App. 3d 194, 199 (1997) (combined motion to dismiss pursuant to section 2-619.1 of the Code is proper if movant indicates under which section of the Code each part of the combined motion to dismiss is brought). The court dismissed the complaint, citing 2-615 (failure to state a claim) and 2-619 (affirmative matter/statute of limitations) bases. We review *de novo* dismissals under both 2-615 and 2-619. See, *e.g.*, *Zahl v. Krupa*, 365 Ill. App. 3d 653, 658 (2006). Further, when reviewing a dismissal under either section, we accept all well-pleaded facts as true and make all reasonable inferences therefrom. *Id.*

¶ 29 B. Dismissal With Prejudice Was Proper

¶ 30 On appeal, plaintiffs ask that we reverse and vacate the court's order dismissing the complaint against Vann and remand so that they can file an amended complaint. Plaintiffs assert that, had they been afforded leave to amend, they could have alleged additional facts to support their causes of action and establish their exemption from the "allegedly expired" statute of limitations. They note that discovery might uncover information reflecting that the statute of

limitations did not commence until they knew or reasonably should have known that they were injured. Plaintiffs emphasize that the Tort Immunity Act does not apply because they sued Vann in his individual capacity for actions and conduct that were intentional, malicious, and exceeded his authority and position. Specifically, plaintiffs alleged that Vann, "the Building Code and Enforcement Division Manager of St. Charles," sought to defraud plaintiffs and concealed his deception. Further, plaintiffs alleged that Vann misrepresented that no compression logs were submitted to maintain the permit, when they allege that Thomas had, in fact, provided the logs. They argue that they further alleged that Vann maliciously pulled the permit for the construction project at the subject property to aid Thomas in his contract dispute with plaintiffs. As such, plaintiffs contend, the Tort Immunity Act does not apply to immunize Vann nor, by extension, does the one-year statute of limitations apply.

¶ 31    We note that, although, in their prayer for relief, plaintiffs request that we reverse the dismissal of the entire complaint, plaintiffs' counsel below requested leave to amend only counts IV and VI, which he referred to as the "defraud" counts. Further, in their brief's statement of the issues, plaintiffs question whether they should be permitted to "amend and re-plead fraudulent concealment or civil conspiracy." Thus, it is not clear whether plaintiffs seek leave to amend only those counts or the entire complaint. In any event, plaintiffs argue that, had the court given them leave to amend, they might have been able to cure the defects. Vann responds, in part, that plaintiffs were not entitled to amend because their request came after a final judgment, since the court dismissed the complaint "with prejudice." We need not address Vann's argument in this regard. We conclude that, even if plaintiffs' request for leave to amend was a valid one, the trial court properly denied it and dismissed the claims as barred by the statute of limitations.

¶ 32    Specifically, section 2-616(a) of the Code provides that, at any time before final judgment, amendments to the pleadings may be allowed on just and reasonable terms.  See 735 ILCS 5/2-616(a) (West 2020).  "Courts are given broad discretion in liberally allowing amendments of pleadings to foster the policy of resolving controversies on their merits."  *Boffa Surgical Group LLC v. Managed Healthcare Associates Ltd.*, 2015 IL App (1st) 142984, ¶ 32.  However, the ability to amend the pleadings is not unlimited; "[a]mong the factors to be considered in deciding that discretion was properly exercised is whether the proposed amendment would cure the defective pleading; whether it could cause prejudice or surprise to other parties; the timeliness of the proposed amendment; and whether previous opportunities to amend the pleadings could be identified."  *Talas v. Youngstown Sheet & Tube Co.*, 134 Ill. App. 3d 103, 107 (1985).  Here, by dismissing four counts as falling outside the applicable statute of limitations, the court inherently determined that no amendment could cure the pleading's defects and would, therefore, be untimely.

¶ 33    Section 8-101(a) of the Tort Immunity Act provides that no civil action may be commenced against a local entity or any of its employees for any injury "unless commenced within one year from the date that the injury was received or the cause of action accrued."  745 ILCS 10/8-101(a) (West 2020).  Section 8-101(c) clarifies that a "civil action" includes "any actions, whether based upon the common law or statutes or Constitution of this State."  *Id.* § 8-101(c).  Section 1-202 defines "employee" as a present or former servant or employee.  745 ILCS 10/1-202 (West 2020).  As such, here, at all times relevant to the complaint, Vann was a City employee as defined by the Tort Immunity Act.  In fact, the complaint alleges this.  Further, there is no dispute that the claims plaintiffs pursued against Vann are "civil actions" as defined by the Tort Immunity Act.  Moreover, the complaint allegations, taken as true, reflect that, in November 2017, Vann made his comments

to Ciccone that the compression logs would not be provided until Thomas and USS were paid. In addition, documents attached to the motion to dismiss (which plaintiffs did not rebut) reflect that, in April 2018, Ciccone wrote to Vann concerning the building department's request for the compression results, stating that USS would not provide them and urging that the building department should "subpoena" them. Vann emailed back, reiterating the permit review and plan requirements, as well as noting that the department did not have the resources to pursue legal action against contractors to provide information that is the property owner's obligation to provide. Although the complaint alleged that the permit was later "pulled," it did not specify the date. However, the record reflects that, on October 26, 2018, Vann informed plaintiffs that, because information necessary to complete review of the application had not been received, the application for construction of the residential addition was voided. Accordingly, at the very latest, by October 26, 2018, plaintiffs clearly knew of their injury. Yet, plaintiffs did not file their complaint until November 10, 2020, *more than two years later*.

¶ 34 Plaintiffs seek to remove their allegations from the Tort Immunity Act's purview by asserting that Vann's conduct was willful and wanton. They seek leave to "amend and re-plead fraudulent concealment or civil conspiracy with more specific factual allegations to determine *whether* the matter is within the applicable statute of limitations." (Emphasis added.) They emphasize that they sued Vann in his individual capacity and alleged that Vann was acting willfully, wantonly, and engaged in fraud; thus, it is improper to dismiss the claims on the basis that Vann was operating in his official capacity, such that the Tort Immunity Act and its one-year statute of limitations applies.

¶ 35 First, these arguments more concern pleading requirements to state a claim under section 2-615, as opposed to the statute of limitations dismissal under section 2-619. For example,

plaintiffs cite *McKay v. Kusper*, 252 Ill. App. 3d 450, 460 (1993), as authority for the proposition that immunity applies only to officials who make discretionary judgments based upon the public needs (arguing that Vann's actions did not concern public needs), and that "immunity does not extend to a public employee's acts based on corrupt or malicious motives or willful and wanton acts." Similarly, plaintiffs also cite *Loman v. Freeman*, 229 Ill. 2d 104, 112 (2008), for the proposition that whether an action is one against the State depends on the issues involved and relief sought, and a State employee who breaches a duty is no more entitled to immunity than is a private individual who breaches that same duty. Their reliance is misplaced, as plaintiffs conflate the concepts of immunity, which the trial court did reach, and statutory limitations. See, *e.g.*, *Griffin v. Willoughby*, 369 Ill. App. 3d 405, 412 (2006) (rejecting the plaintiff's argument that, if the defendant would not be immune for his actions, the limitations period in section 8-101 of the Tort Immunity Act should not apply and noting that the limitations period and the likely success of an immunity defense *are not connected*).

¶ 36    Second, we also note that plaintiffs did not plead willful and wanton conduct; rather, although the word "willful" occasionally appears in the complaint, the "defraud" counts IV and VI alleged "malicious" conduct. Our supreme court has held that there is no "corrupt or malicious motives" exception contained in the Tort Immunity Act. *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 494 (2001). Further, there are specific pleading requirements to sufficiently allege the willful and wanton conduct exceptions to the Tort Immunity Act, none of which were pleaded here. See, *e.g.*, *Floyd v. Rockford Park District*, 355 Ill. App. 3d 695, 700 (2005) ("To sufficiently plead willful and wanton conduct, a plaintiff must allege not only duty, breach, and proximate cause [citation], but also that the defendant engaged in a course of action

that showed a deliberate intention to harm or an utter indifference to or conscious disregard for the plaintiff's welfare.").

¶ 37    In any event, focusing on the court's section 2-619 dismissal based on the statute of limitations, plaintiffs assert that the one-year statute of limitations cannot apply to "malicious actions an individual undertakes outside of the authority of employment," but they cite no authority for this proposition.  Moreover, courts have held that, to recover against a local employee, acting within the scope of employment, a plaintiff must file suit within one year, *even if* the plaintiff is seeking to recover against the employee in only his or her individual capacity.  See, *e.g.*, *Sperandeo v. Zavitz*, 365 Ill. App. 3d 691, 694 (2006); see also *Delgadillo v. Paulnitsky*, 2007 WL 1655252, at *5 (N.D. Ill. June 1, 2007) (citing *Sperandeo* and noting, "Illinois courts have made clear that the Tort Immunity Act's one-year statute of limitations applies even where an employee is sued in his individual capacity").  Here, regardless of the complaint's statement that Vann was being sued in his individual capacity, the allegations reflect that his involvement was *entirely* connected to the scope of his employment and his position and authority within the City's building department. Indeed, all of plaintiffs' claims against Vann seek damages and stem from information required by the building department, communications with Vann over those requirements, the failure to release and "officially" submit the logs with the building department, and the resultant harm from the ultimately-voided permit application.  In other words, but for his position as the City's Building and Code Enforcement Division Manager, Vann's conduct and communications would be irrelevant; an individual *not* in Vann's position would have had no ability to cause the harm plaintiffs allege against him.  As such, the claims clearly are barred by section 8-101's statute of limitations, and the court's dismissal of them with prejudice was proper.  Therefore, as this issue is dispositive, we need not reach the propriety of the court's dismissal for failure to state a claim.

¶ 38                                III. CONCLUSION

¶ 39    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 40    Affirmed.